UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:                       .    Case No. 16-15598-SLM
                             .
38-36 GREENVILLE AVENUE, .        M.L.K. Federal Building
LLC,                         .    50 Walnut Street, 3rd Floor
                             .    Newark, NJ 07102
                             .
         Debtor.             .    April 22, 2019
. . . . . . . . . . . .  .         11:06 p.m.


TRANSCRIPT OF ORDER TO SHOW CAUSE
BEFORE HONORABLE STACEY L. MEISEL
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:              Kevin K. Tung, P.C.
                             By:  KEVIN KERVENG TUNG, ESQ.
                             136-20 38th Avenue
                             Suite 3D
                             Flushing, NY 11354

For the Trustee:             Office of the United States Trustee
                             By:  MITCHELL HAUSMAN, ESQ.
                                  DAVID GERARDI, ESQ.
                             One Newark Center
                             Suite 2100
                             Newark, NJ 07102

For Charles M. Forman,       Forman Holt
the Chapter 7 Trustee:       By:  MICHAEL E. HOLT, ESQ.
                             66 Route 17 North
                             First Floor
                             Paramus, NJ 07652



Audio Operator:              Ana Costa


Proceedings recorded by electronic sound recording, transcript
             produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

2

1          THE COURT:  So, this is 38-36 Greenville Avenue and

2    I'll take the parties' appearances.

3          MR. HAUSMAN:  Good morning, Your Honor.  Mitchell

4    Hausman for the Office of the United States Trustee.

5          MR. GERARDI:  Good morning, Your Honor.  David

6    Gerardi with the Department of Justice, Office of the U.S.

7    Trustee.

8          MR. HOLT:  Good morning, Your Honor.  Michael Holt,

9    Forman Holt on behalf of Charles M. Forman, the Chapter 7

10   trustee.

11         MR. TUNG:  Good morning, Your Honor.  Kevin Tung on

12   behalf of 38-36 Greenville Avenue, LLC.

13         THE COURT:  Thank you.  Good morning.

14         MR. TUNG:  Good morning.

15         THE COURT:  So, we're here today on the Court's order

16   to show cause that set forth a number of reasons why the Court

17   was calling this hearing, which stems out of, originally, out

18   of a fee application that was filed on behalf of KKT law firm,

19   and I'm using my short form name, Kevin Kerveng Tung, P.C. and

20   also the order to show cause issued against counsel Kevin K.

21   Tung.

22         And I had replies filed on behalf of KKT and Mr. Tung

23   and also support filed by the Office of the United States

24   Trustee and on behalf of the Chapter 7 trustee.

25         So, I'm going to go over a little bit, although it

1   was set forth as to why the Court called the hearing.  I'm

2   going to hear from Mr. Tung first, and then I'll hear from the

3   other parties and back to Mr. Tung again.

4            I think you were able to surmise, Mr. Tung, the

5   concerns that the Court had from the fee application hearing

6   that we last had and really based upon the fact that there was

7   $19,400 paid to, what I'll refer to as KKT, which is the law

8   firm, after the retention order was entered by this case.  The

9   retention application that was filed by KKT and signed by you

10  indicated that a $3,000 retainer had been paid for the

11  bankruptcy case.  The Court entered an order that further,

12  further application would be subject to order of the Court.

13           The case proceeds, it's litigious.  It ultimately

14  converts from a Chapter 11 to a 7.  A Chapter 7 trustee is

15  appointed.  And then the law firm files its first and final fee

16  application.  And it was in the first and final fee application

17  that the law firm revealed that it had received payments during

18  the Chapter 11 bankruptcy case.

19           The characterization of those payments is still open

20  to discussion, which I'm going to hear about today, but there

21  had been nothing provided to the Court about those payments

22  until the first and final fee application was filed.  So,

23  payments were made over time, that came as a surprise to the

24  Court and appeared to come as a surprise to the parties, that

25  KKT had received the $19,400 worth of payments, in addition to

4

1 the $3,000 retainer.  No other pleadings regarding those

2 payments had been filed.

3       The other concern that the Court had was in the

4 discussions or I will say argument regarding the fee

5 application, I questioned as to why to the extent, because at

6 that point the $19,400 was characterized as a loan from

7 debtor's principal, and it was in the transcript, why it had

8 not been disclosed on the monthly operating reports.

9       And you replied that the monies were not disclosed

10 because during the Chapter 11 the debtor was attempting to

11 reorganize, and if those monies had been disclosed, it would

12 not have been able to reorganize because it would have been --

13 it would have shown negative income, or it would have shown a

14 negative, I think that's it, I have the quote someplace.

15       And, so, that raised additional concerns to the Court

16 that there was an intentional, basically hiding the fact that

17 what at that moment had been characterized as a loan, was not

18 disclosed and was intentionally hidden from the Court by not

19 listing it on the monthly operating reports.  So, I didn't

20 issue a decision on the fee application, instead I issued the

21 order to show cause.

22       And one of the issues I raise in the order to show

23 cause is whether, through this conduct, a conflict was created

24 in the case, which would result in disqualification of the law

25 firm as counsel.

1       And I mentioned other Bankruptcy Code provisions and

2 I was concerned about disclosure and the U.S. Trustee's Office

3 supplied 329, which is the fact that payments need to be

4 disclosed when received, implemented by Rule 2016 which

5 requires 14 days to disclose those payments that are received

6 in connection with the bankruptcy case.

7       So, that's the lay of the land as to why we're here

8 today.  And, so, let me hear from you.  I read the papers and I

9 don't -- and I have to say, I'm not satisfied by them.  They

10 haven't really answered my questions here.  So, those are my

11 concerns, and that's what I want to hear you address this

12 morning.

13       MR. TUNG:  Your Honor, actually, you know, I think I

14 have already explained in my brief and all the paperwork.  But,

15 in any event --

16       THE COURT:  Well --

17       MR. TUNG:  Yeah.

18       THE COURT:  Let me stop you for a second, okay?  I

19 just said I didn't think it was adequately addressed.

20       MR. TUNG:  Yes.  Yes.

21       THE COURT:  It wasn't.  If you want to go by your

22 papers, I can rule right now.

23       MR. TUNG:  No.  No, no, no.

24       THE COURT:  So, it didn't satisfy me.

25       MR. TUNG:  No.

1          THE COURT:  So, I'm asking you to satisfy me this

2   morning.

3          MR. TUNG:  Correct.  Your Honor, so let's address --

4   I hope I'm not going to miss any of the points that you

5   addressed.  First of all, Your Honor, you said we, on the first

6   application, fee application, we only disclosed $3,000 and

7   nothing thereafter, right, any other --

8          THE COURT:  I said on the retention application.

9          MR. TUNG:  Yeah, on the retention application.  But,

10  Your Honor, if you read carefully, if you take a look at it

11  again, as I pointed out in my paper, that $3,000 was disclosed

12  clearly.  It's only up to the first preparation of the petition

13  and it does not even include, you know, the 341 hearings and

14  all of the -- and the motions and adversary proceedings.  I can

15  point it out to the application.  Let me find the page on the

16  petition which spelled out the scope of the service.  On Page

17  29 of the petition.

18          The scope of service rendered for $3,000 was clearly

19  disclosed in the petition, okay, and the motion practice,

20  hearings, adversary proceedings, reorganization plans, and the

21  other service provided after 341 meetings are not included.

22  And that is on Page 34 -- 39 and 40 in the petition.

23          THE COURT:  So, I understand you're telling me the

24  scope of services.  What does that have to do with payments

25  received?

1          MR. TUNG:  Okay.  Your Honor, payments, as to the

2   payments received after the first fee application.  As I

3   explained in my response, because debtor and single member, the

4   interest is united here, so it's basically, the money is --

5   she's a single member from her left hand to right hand, so we

6   take the fees and I said why it was not disclosed, because it

7   was honest mistake.

8          I do admit that I was not familiar with the Code that

9   that has to be disclosed within 14 days of the receipt of the

10  fees.  Right.  That section I was -- I overlooked and my law

11  clerk didn't, I mean they didn't find out and I wasn't aware of

12  this.  So, when they present this, it was not there.

13         For the two weeks disclosure, the supplemental

14  disclosure, that was overlooked.  I agree with you.  But, our

15  argument was that that was a technical overlook that shouldn't

16  be -- warrant -- that shouldn't warrant.  It's honest.  I mean,

17  it was a technical failure to disclose, technical error, and

18  that shouldn't warrant any sanctions.

19         But, Your Honor, when you say not disclose, that's

20  not really entirely correct because I didn't know that I have

21  to disclose it within first two weeks of the receipt of the

22  money from the single member.

23         But, we did disclose that the key question here, the

24  fact here, the fact here is we did disclose at the end, first

25  and last, in the first and final application.  That's why in my

1  response to your question, I remember now, I said this, for the

2  argument's sake, what if people don't disclose and the Court

3  wouldn't know?

4          Well, we were honest.  We were honest.  That's why we

5  disclosed to the Court that we did receive $19,000 during the

6  representation.  But, we thought we didn't have to disclose

7  until our first application to make the fees application.

8          THE COURT:  Do you understand why disclosure is

9  required?

10         MR. TUNG:  Well, I understand now because the Code

11  did require it.

12         THE COURT:  But, besides that, do you understand why

13  the Code requires it?

14         MR. TUNG:  Yes, in general, yes, Your Honor.  The

15  Code -- the reason to disclose the fees is to let the Court and

16  the other parties to know if there's a potential conflict

17  interest with the debtor.

18         But, under these circumstances, as I said, Your

19  Honor, when I look at the issues, I thought it was a united

20  interest.  And we represent the debtor in State Court action,

21  continuing here, and we never thought that was a problem.

22         It was never -- because we represented debtor's

23  interest and debtor only has one single member.  Her interest

24  and the members, her interest and the debtor's interest are

25  united.  They're all the same.  They tried to sell all the

1 properties.  They tried to sell the properties.  And that's the
2 only interest they have.

3     There's no, I mean, even if I pay -- even if she, the
4 single member, pays me the legal fees and I still would not
5 divide my interests or my loyalty to anyone else other than the
6 debtor, the single member.  The interest is united.  That's why
7 I never thought about this, Your Honor.

8     I know, I understand, if I receive from a creditor.
9 Those case laws cited by trustees or anybody else.  If I
10 receive fees in one other case, fees from the creditors, major
11 creditors, or if I receive fees from multiple shareholders in
12 the corporation, one of the shareholder putting the money in,
13 of course that requires immediate disclosure.  I understand
14 that.  But, when you have a single member, it has united
15 interest, I didn't think that it was necessary.

16     And, on the other hand, the case law said, right, as
17 you just said, if there was not an intention to hide anything
18 because the debtor, to start with, it didn't have enough money
19 and the first --

20     THE COURT:  Wait.  You said I just said.  What did I
21 just say?

22     MR. TUNG:  No.  When you said that it kind of shows
23 there's some intention to hide the money because otherwise if
24 the debtor doesn't have money to reorganize if the debtor has
25 to pay the legal fees.  I don't remember exactly what I said,

1  you know.

2          But, the purpose, we tried to save the debtor.  At

3  the time, we tried to work out a five-year plan so the debtor

4  can take the refinance and mortgage, right.  And we tried to,

5  in the meantime, we pay off a set amount.  And we even went to

6  mediation.  So, we tried to save the debtor's company.

7          Now, if the debtor itself at that point in time, they

8  don't have money, and we represent clearly to the Court there

9  was no other agreements and we never entered into any loan

10 agreements.  And even the debtor, the single member, didn't

11 enter into any loan agreements with the debtor because what's

12 the difference?  It's her money.  She trying to save the

13 debtor's property.

14          So, if more money is going to be paid out for

15 attorneys fees, then there will be no money left for a possible

16 reorganization.  So, at that point in time, before the case was

17 converted to Chapter 7, we never thought about this, we never

18 thought it would work and we were trying to save the company,

19 so by reorganize -- and the papers said, that was even, by

20 paying legal fees by a single member, which is not, I mean not

21 like treat it as a loan to the estate, which is not going to

22 affect anybody else interest, even including the creditors.

23          THE COURT:  What was this money?  So, I don't know

24 how to characterize this money.

25          MR. TUNG:  That is actually a question, Your Honor, I

11

1  mean we discussed this before, and I --

2          THE COURT:  Yes.

3          MR. TUNG:  Yeah.

4          THE COURT:  And I have multiple answers.

5          MR. TUNG:  Yes.  Even in my paper, I honestly, okay,

6  let me put it that way.  Before the case was converted to

7  Chapter 7, we never thought about this.  The debtor, the single

8  member, the attorney counsel here.  We never even thought that

9  this would become an issue, right.  It's all her money.  Left

10 hand, right hand, right?  It's all her money.

11         But, after the case was converted to Chapter 7,

12 there's a question raised, and I didn't have the answer.  The

13 money I paid legal fees for the company, how to treat this?

14 This exactly is the question, Your Honor.  You had it now, I

15 had it before.  We do not know how to deal with this question

16 because I have not seen any case law saying that how we're

17 going to treat this, right.

18         It was never loaned to begin with and, so, we never

19 treat this was a loan -- we never treat this as a loan because

20 the end was.  So, the only question is -- so, the only thing we

21 can say is, we present this, the true facts, what have

22 happened, to the Court.

23         THE COURT:  So, it was not a loan?  Not a loan?

24         MR. TUNG:  It was not a loan.  There's no loan

25 agreement.  Nobody ever said that's a loan.

12

1          THE COURT:  Well, you did say it was a loan, because

2   I have it all through the transcript from the last hearing, you

3   did call it a loan.  So, I want to make sure.  You can change

4   how you characterize it, but we are going to stick to one

5   characterization.  So, you can't tell me you don't know what it

6   is.  You've got to know, it's either a gift on behalf of the

7   debtor to the debtor, or it's a loan.  Because what else --

8   unless somebody else can think of another way to call it, you

9   only got two choices, she loaned the money, she gave the money.

10          MR. TUNG:  Correct, Your Honor.  Last in the

11   transcript when you first asked me was that a loan, I said, no,

12   there was never a loan.  Then you asked me again, right, was

13   that a loan?  Your Honor, when you stand here, I don't know,

14   just like unconsciously I said, it could be a loan.  I didn't

15   know because -- but it was definitely not a loan.  The fact is

16   it was definitely not a loan.  There is no agreement.

17          The debtor or the single member debtor expected that

18   she is going to be reimbursed if the company -- if the

19   reorganization went into place, if the company successfully

20   entered a reorganization plan.

21          THE COURT:  So, she put that money into the debtor as

22   an infusion of money into the debtor?

23          MR. TUNG:  It could be characterized --

24          THE COURT:  It can't be --

25          MR. TUNG:  Yeah.

13

1        THE COURT:  -- it could be.

2        MR. TUNG:  Investment.

3        THE COURT:  It is or it isn't.

4        MR. TUNG:  No.  I'm going back now.

5        THE COURT:  Okay.

6        MR. TUNG:  It could be her company, so she invested

7  in this, right.  It could be like this and --

8        THE COURT:  Well, it could be a lot of things.  I

9  don't want to hear it could be.

10        MR. TUNG:  Yes.

11        THE COURT:  I want to hear what it is.  I need to

12  know what this money was.

13        MR. TUNG:  Well, there is only one way to

14  characterize it legally if it's not a loan, it is investment,

15  legally speaking, right, investment.  And the Court -- the case

16  law says, right, the debtor -- the shareholders or members do

17  not have to actually put the money into the debtor's company

18  and then have the debtor's company to write checks to the

19  attorney, right.  That was the case law I cited here in my

20  papers.  If you need a citation I can find it.

21        THE COURT:  Yes, go ahead.  Tell me what the cite was

22  again.  So, you're going back to the conflict of interest.

23  We've finished with the disclosure.  There's an admission that

24  there was no disclosure because you didn't know.  So, you're

25  dealing with whether the investment into the debtor's company

14

1  was a conflict of interest, right?  Is that what I'm hearing?

2          And your argument is that it was not a conflict of

3  interest because it was the left hand and the right hand, as

4  you put it.  They are the same.  They have the same interest

5  and they're aligned.

6          MR. TUNG:  Correct, yes.  That's my argument, yes.

7          THE COURT:  So, perhaps, at the beginning of the

8  case, taking your argument, there wasn't a conflict of interest

9  when the case was filed.  But, when the money starts to be

10 received and it's not disclosed to the Court, because there is

11 a potential conflict of interest between a debtor's principal

12 and a debtor, depending on their circumstances.  There can be a

13 potential conflict of interest, as they may not always align as

14 the case moves forward, depending on whether there are causes

15 of action or how the case plays out.  But, in the beginning,

16 let's say it was a potential conflict of interest.  The payment

17 of the money without Court approval or disclosure to the Court,

18 creates a conflict of interest.

19         MR. TUNG:  Well, Your Honor, as I explained to you at

20 the very beginning, at least when I assess the situation,

21 right, it's a united interest, I didn't see a conflict of

22 interest.  But, you say potentially create a conflict of

23 interest.

24         THE COURT:  No, no, I said it was a potential at the

25 beginning because there's always a potential, well, most of the

1  time there's a potential for conflict --

2          MR. TUNG:  Right.

3          THE COURT:  -- when you have a principal and debtor

4  corporation.  It's whether there's an actual conflict.

5          MR. TUNG:  Right.

6          THE COURT:  Or whether an actual conflict occurs.

7  Does the payment of the money then create the actual conflict

8  in the circumstances that we have in this case?

9          MR. TUNG:  Yes.  It wasn't, as I stated before, it

10  couldn't create an actual, and the word actual conflict of

11  interest because of their interest were united, both of the

12  interests were then -- it's a single member.  Single member and

13  the debtor, one company, has one single member.  All the

14  purpose they have, right, whether --

15          THE COURT:  Does it create a conflict of interest

16  with you and the debtor's estate by receiving that money

17  without disclosing it and without advising?

18          MR. TUNG:  No, Your Honor, because I only represent,

19  I never divided my interest to represent anyone else, other

20  than the debtor, and the single member, right.  So, that's why

21  I didn't see it, if the Court sees it, if you see it, but I

22  didn't see it at the time when I assessed the situation.  I

23  didn't see there was a potential or even actual conflict of

24  interest.

25          THE COURT:  Keep going.  I've interrupted you.

16

1          MR. TUNG:  Okay.  So, that's why I said I didn't see

2    it at the time.  No, it wasn't intentional to hide something.

3          THE COURT:  So, at the time you didn't see it.  What

4    do you think today?

5          MR. TUNG:  And today I even, even today as I argued,

6    it was in my paper, it was, I spell out and cite case laws, and

7    I still do not see a divided interest, conflict of interest

8    here.

9          THE COURT:  Between you and the --

10         MR. TUNG:  Between me and the debtor and the single

11   member.

12         THE COURT:  So, you don't think -- so, in allowing --

13   I understand you didn't know, didn't understand Bankruptcy Rule

14   2016 requiring disclosure.  But, in accepting money, that

15   violates the retention order, number one; and, two, violates

16   the Code and the Rules.  Does that not create a conflict of

17   interest between you and the debtor?

18         MR. TUNG:  You mean -- I agree --

19         THE COURT:  Well, actually, and strike that.

20         MR. TUNG:  Yeah.

21         THE COURT:  And one other thing is -- not strike it,

22   but moving forward.  Also, so now we've changed from a loan to

23   an investment.  But, wouldn't an investment have had to have

24   been disclosed on the monthly operating reports as an influx of

25   cash for the debtor?  It still has to show on the books and

1  records.

2            So, we have all of these things that have happened.

3  Does that not create a conflict between you and the estate, or

4  at least amount to you no longer being disinterested in this

5  estate?

6            MR. TUNG:  Well, Your Honor, no, we are looking at

7  things backwards.  At the time, of course, if I knew this was

8  going to be this much complicated, of course, that would be

9  different, treated differently.  But, nobody can ever foresee

10 everything.  Judges make mistakes.  Lawyers, you know, when

11 they're doing cases, makes a mistake.

12           THE COURT:  So, we have appeals.  You have this

13 process.  When we make a mistake, you can appeal it.  You make

14 a mistake, you've got to come to me and explain it.

15           MR. TUNG:  That's why I explained to you what had

16 happened.  The key point I stressed is there was no, nothing

17 hiding, intentionally, to deceive the Court.  That's the key

18 point.

19           THE COURT:  Well, do you --

20           MR. TUNG:  Yes, it's a mistake.  We overlooked the

21 two week's requirement to file the disclosure.  I agree with

22 it.

23           THE COURT:  Do you realize that the case law that's

24 been cited, and the case law that I read, that when -- that's

25 almost a strict liability standard though, it's a harsh, there

1  are harsh judgments that are issued for violations of Section

2  329.  There are harsh -- it's a harsh effect when you have a

3  conflict of interest.  So, the reprisal that comes from those

4  violations, usually results in disqualification and

5  disgorgement.  So, I understand that you're telling me that you

6  didn't know, but not knowing isn't a protection to the

7  violation.

8       MR. TUNG:  Well, Your Honor, I only said I didn't

9  know, I wasn't aware of that two-week, the supplemental

10  disclosure requirement.  But, in fact, I pointed out to the

11  Court, we did voluntarily disclose at the end of the

12  application, which we thought that was sufficient.  So, there's

13  a distinction there, Your Honor.

14       THE COURT:  Well, you disclosed it, but the timing is

15  wrong and the ability of the Court and the parties to have any

16  say-so throughout the case as to whether it would be

17  appropriate was gone.  So, while it may have been disclosed, it

18  was disclosed at a time that was convenient to counsel, but

19  didn't help any of the parties in the case insofar as how the

20  case would proceed.

21       MR. TUNG:  Correct, Your Honor, but this was a

22  harmless error, right, the failure to disclosure it within two

23  weeks.  And case law said, right, there are case law only one

24  side punishing people who fail to, intentionally fail to

25  disclose with very harsh results, disqualification and the

1  disgorgement.

2       But, those cases deals with a, as I said in my reply,

3  it deals with creditor's investment and complicated agreement

4  which, you know, says the money can be possibly taken from the

5  estate.

6       But, the case over here is harmless error.  I have

7  cited also cases which supports my situation.  If it's

8  non-willful violation of the Code, generally do not call for

9  imposition of harsh sanction of complete disclosure and legal

10 fee, I mean, disgorgement of fees.

11      And, especially, it is, I mean, it's what we've

12 described as a technical defense.  So, there are case law for

13 both sides, Your Honor.

14      THE COURT:  And what about the conflict?

15      MR. TUNG:  The conflict I always, Your Honor, I

16 argued I don't think there is any conflicts because it's united

17 interest, it's one single member.

18      THE COURT:  I'm talking about conflict, forget debtor

19 and debtor's principal, I'm talking about the conflict between

20 counsel and the estate when counsel is accepting money that is

21 not disclosed to the Court and assisting the debtor in

22 violation of the Code because -- or in filing faulty monthly

23 operating reports.

24      When I look at those two things, does that not create

25 -- because what you told me last time was, we weren't going to

1 say anything because we wanted this case to succeed in Chapter

2 11.  It didn't succeed, so now we're saying something.  And

3 does that not create a conflict in your interest and the

4 debtor?

5          MR. TUNG:  I try to understand, Your Honor, that you

6 are mad at us here because from the very beginning I said,

7 right, the debtor's interest and the single member's interest

8 are united here.  If the debtor's interest cannot be

9 successful, right, to a reorganization plan, that should apply

10 the same to the single member interest.  So, I don't see there

11 is any interest.

12          Now, when you're talking about my interest, my

13 interest is to represent the debtor, right, to represent the

14 debtor.  Now, because by taking the money, taking the fees from

15 the single member, only member in the debtor's corporation, in

16 the debtor's, not corporation, in the debtor's single member

17 LLC, I don't, I still do not see that I have to divide my

18 loyalty to, I mean I have to deviate from my representation of

19 the debtor and the --

20          THE COURT:  Do you understand --

21          MR. TUNG:   -- and the single member.  Even if Your

22 Honor said -- even if, let's say, I overlooked the statute, my

23 failure to disclose, right, but that's going to create, let's

24 say that's going to create a disadvantage for the debtor, that

25 would be the same disadvantage for the single member.

1            THE COURT:  Well --

2            MR. TUNG:  That's why I still don't see the interest,

3  conflict of interest.  Anything happens to the debtor, whether

4  good or bad, it will be the same to the single member, bad or

5  good.

6            THE COURT:  See, so what I'm struggling with here is

7  that you still refuse to separate out who you represented.  Do

8  you understand that you were a fiduciary to the estate in

9  Bankruptcy Court?

10            MR. TUNG:  Yes, to the debtor's estate, that's

11  correct.  Yes.

12            THE COURT:  Okay.  And the debtor's estate is not the

13  debtor's principal.  It may be a single member entity, but

14  they're different.

15            MR. TUNG:  Correct.  I agree.  It's not absolute, but

16  in this case, in the instant case, I argue their interests.

17  That's all I'm saying here.

18            THE COURT:  Their interests may have been united.

19  Your interests become different when -- it was your job to

20  guide the debtor through the bankruptcy process.

21            MR. TUNG:  Correct.

22            THE COURT:  Okay.  When you, you may not have known

23  that it was a violation of the Code, we've cleared that -- you

24  know what?  Forget the question.  You said to me, we did not

25  put it on the monthly operating reports because it would have

1   shown a negative.  Explain that statement to me.

2           MR. TUNG:  Oh, I don't remember exactly what I said,

3   but let me explain to you what I meant, what I meant.  Because

4   the debtors, it's a company, right, monthly operating, there's

5   no income, already no income, all right.

6           If additional burden as I imposed onto the debtor's

7   corporation, or debtor's LLC, there is no chance for the

8   debtor's corporation to be successful in the reorganization

9   plan.

10          So, if the single member volunteered to pay the legal

11  fees, and that's not even taking the money out from the debtor,

12  out from the debtor's LLC, it could be like you said a gift.

13          THE COURT:  So, this doesn't jive with the last

14  hearing, and I'll tell you why.  So, in the last hearing you

15  told me that if you included the money, it would be a negative

16  that, I'll quote you, you said if the post-petition money for

17  legal fees was included, quote, the monthly operation report

18  most likely will go negative, end quote.

19          Now, if the money was actually an investment, then

20  there wouldn't have been a negative, there would have been

21  either a break even for the payment of the fees, or a positive.

22  So, can you please reconcile that information for me?

23          MR. TUNG:  Okay, Your Honor, I agree with you.  The

24  investment, the category why, I mean at the very beginning last

25  time and this time, Your Honor, I do have difficulties to

1  category this legal fees.  I agreed, even if my paper I said

2  this, right.  That's why we present the facts to the Court.

3          Now, we discuss it was not a loan.  Then Your Honor

4  raised the question of whether or not it could be a gift.  I

5  cannot answer because it was never, I mean, nobody said to me

6  it was a gift, so I couldn't answer this.

7          Then we discuss today, we say what it is.  We try to,

8  after the facts, we tried to characterize, legally

9  characterize, what it is.  So, I said it's investment.  All of

10  these things happened is afterwards, after this happened, event

11  happened.  We tried to characterize what it is.

12          But, it is, now you're asking me now if it's

13  investment, it should be disclosed on the monthly statement.

14  If I knew it was investment, Your Honor, that would be

15  disclosed on a monthly statement.

16          The problem is, it wasn't treated as investment, it

17  was just we are here now, afterwards, trying to characterize

18  what it is.

19          THE COURT:  Okay.  So, regardless of what it is, it

20  was money that was paid on behalf of the debtor, correct?

21          MR. TUNG:  It was money paid on behalf of the debtor

22  by a third, legally speaking, by a third party.

23          THE COURT:  So, if that is the case, and there --

24          MR. TUNG:  It could be gift.

25          THE COURT:  If there was --

24

1          MR. TUNG:  By the third party paying the legal fees

2  and never expect --

3          THE COURT:  When I start to talk, you stop.  Got it?

4          MR. TUNG:  Yes, I got it.

5          THE COURT:  All right.  If it was money paid on

6  behalf of the debtor, no matter how it was shown, wouldn't it

7  have to appear someplace on the monthly operating report?

8          MR. TUNG:  Your Honor, to be honest, at the time when

9  this happened, I wasn't aware of this.  I don't know how to --

10 my law clerk, I mean, my associates within the case, are

11 related and disclosed?  I wouldn't know.  I mean, this happened

12 --

13         THE COURT:  Well, you told me that you are very

14 experienced in Chapter 11.  I think that was in your first

15 reply about your reputation and your experience in bankruptcy

16 cases.  So, how does that reconcile to all of the things that

17 you don't know in this Chapter 11?

18         MR. TUNG:  Your Honor, this is a very unique case.  A

19 case we represent before was never a, it's a regular company,

20 never a single member case, okay.  So, Your Honor, experience,

21 no matter how experience an attorney has, and they could still

22 make mistakes, we're all human beings.  I admit it.  I made a

23 mistake.  I overlooked the statute that when you receive cash

24 payment, within two weeks you have to disclose.  I recognize

25 this.

1          THE COURT:  But, that's the first mistake.  The

2   second mistake is -- so, even if you didn't disclose it, it

3   would have been caught by somebody if it was on the monthly

4   operating report.  And, so, that was a failure to disclose as

5   well because it was money for the debtor.

6          MR. TUNG:  I do not, Your Honor, I do not recall, if

7   you can recall this or no, I do not recall, so my legal

8   research that's if a third party pays legal fees has to be

9   disclosed on the debtor's interest.  I have not seen this

10  before.

11         Anything could have happened, Your Honor.  I already

12  said many times, all of these things, we are now afterwards,

13  after this occurred.  As I pointed out to you, Your Honor, if

14  there was never a conversion to Chapter 7, that would never be

15  an issue because we never have to apply for legal fees.

16         THE COURT:  So, you would have never told the Court?

17         MR. TUNG:  We never have to apply for legal fees.

18         THE COURT:  In a Chapter 11?

19         MR. TUNG:  In Chapter 11, because it's all her money.

20  If we are successfully reorganized, why do we have to put in

21  the legal fee applications?  There is no legal fee application.

22  It's all her money.  It's all her money.  That's what we first

23  started --

24         THE COURT:  So, are you saying that in a Chapter 11,

25  that the debtor's principal could have paid all of the legal

1  fees and it would have never had to have been disclosed to the

2  Court?

3          MR. TUNG:  I never said this in general, I said in

4  this particular case when the debtor principal is only one

5  person, one single member, one person, the debtor's company and

6  that person's interests are the same.  That's the only

7  situation, Your Honor.

8          THE COURT:  So, in this case, since you want to put

9  it to this case, if the case had remained in Chapter 11, would

10 the fees that were paid by debtor's principal have to be

11 disclosed to the Court?

12         MR. TUNG:  I cannot answer this because it was --

13         THE COURT:  You just answered.

14         MR. TUNG:  Yeah.

15         THE COURT:  You just told me that they wouldn't have

16 to be disclosed.  That you would never have told if the case

17 remained in a Chapter 11.

18         MR. TUNG:  We never have to apply for, if the Chapter

19 11 was successfully reorganized, we never have to apply for

20 legal fees.  That's all I said.  All I said.  Never have to

21 apply for legal fees.  I didn't say we didn't have to disclose.

22 It might very well be disclosed in the disclosure agreement,

23 disclosure plan, saying that the single member filed legal

24 fees, right.  But, that never happened.  So, I did not say --

25         THE COURT:  So, you would never have to apply to the

1 Court for Court approval of the legal fees?

2        MR. TUNG:  I never have to apply for legal fees, yes,

3 that's what I said.  Because it's a single member, yes.  But,

4 the disclosure may still be there.  The debtor's counsel's

5 legal fees funded by a single member, which she never had any

6 intention to burden the debtor's LLC.  But, that didn't happen,

7 so I cannot say.

8        THE COURT:  Okay.  Do you have anything else?

9        MR. TUNG:  I don't have anything else, other than

10 just saying that the case law still said if it's a technical

11 defect and there's a tardiness and the Court should not impose

12 sanctions.

13        THE COURT:  Thank you.

14        MR. TUNG:  Thank you.

15        MR. HAUSMAN:  Mitchell Hausman for the Office of the

16 United States Trustee.  Your Honor, just I do have a prepared

17 statement that I'd like to go through subject, of course, to

18 questions by Your Honor.

19        But, just in hearing the colloquy back and forth, I

20 think it does show a lack of understanding of compensation in

21 the bankruptcy system.  And I just want to point out whatever,

22 you know, I'll take Mr. Tung at his word that there was no

23 understanding, but the fact of what he's trying to do in the

24 fee app in terms of paying back the sole member, is treating

25 this as a loan.  That's what he's trying to -- he's trying to

1  pay her back.

2          So, regardless of what understanding they had, and at

3  a minimum when he's trying to pay the principal back, I think

4  that's a conflict and certainly renders him disinterested.

5          But, I don't even know if we have to, you know, the

6  representation is over at this point, but going along with his

7  statements, what is just as if not more disturbing as what

8  transpired in this case, is his explanation and mistakes of law

9  and fact that are stated in his papers.

10          Given what I've read and what I've heard here today,

11  I have no confidence that a similar situation will not happen

12  again, and I urge this Court to send a strong message and deny

13  all compensation and disgorge the funds received by Mr. Tung.

14          And, you know, there was the 329 and 2016(b), but he

15  also did not comply with 330.  And by applying for the fees

16  before he received payment it's not -- he also -- it's stated

17  in his retention order, but also in the application, he states

18  he's going to comply with 330 and 331.  And just as serious, if

19  not more, than the lack of disclosure, is taking funds in a

20  Chapter 11 without a fee app.

21          And going through his papers, in his reply to the

22  order to show cause he talks about the restrictive analytical

23  approaches in a Chapter 11 case and should -- whether counsel

24  should be able to represent a debtor when the fees are paid by

25  an insider and cites to _Lotus_, _Missouri Mining_, and _Kelton_

1  Motors.

2         He makes a point of saying that there is no per se

3  ruling regarding the payment of fees from an insider and the

4  Court must look at the facts of each case to determine whether

5  counsel holds an adverse interest.

6         He cites to Olson and the four factor test and he

7  goes through the test.  And what he's really missing there in

8  all these cases cited by Mr. Tung, it assumes that there has

9  been disclosure.

10        And this hearing we're having today and talking about

11  a conflict, should have occurred when he filed his retention

12  application.  It's almost, I don't want to say it's moot

13  because it could enter into the sanction Your Honor rules, but

14  it's moot in the sense this should have been held at the

15  retention stage and not now.

16        And Mr. Tung believes, and he states this over and

17  over again, that he has made full disclosure because he

18  accurately stated what happened in the fee application.  And

19  let's just think about that for a second.  The fee -- his

20  retention application was filed April 6, 2016.  The fee

21  application was filed approximately one and a half years later

22  on October 31st, 2017.

23        Whether this is a conflict or not should have been

24  argued, you know, at this point it's more than a year and a

25  half ago, but it should have been argued around in 2016 when he

30

1    filed his retention application and that's why disclosure is so

2    important.  But, to even say that he's made full disclosure at

3    the fee app stage, shows a lack of understanding of the

4    importance of the disclosure requirements.

5         And the next factual mistake Mr. Tung makes is saying

6    that most of the unpaid fees were incurred for services

7    rendered after the case was converted from Chapter 11 to

8    Chapter 7.  And this is simply not true.  We went into this in

9    our papers.

10        The total fee app was 29,720 and of which 25,000 was

11   billed before conversion.  And of the remaining 4500 that was

12   billed post-conversion, 3400 of it was in preparation of the

13   fee application.  So, it leaves maybe $1500 that was billed

14   after the case converted.

15        Mr. Tung states that the disclosure of compensation

16   paid or promised to the attorney -- to the debtor was timely

17   complied with 2016 because there was no order for relief was

18   entered in this case and 2016(b) is triggered by an order for

19   relief.  That's on Page 26.  You know, again, this just shows a

20   lack of understanding.

21        Bankruptcy Code Section 301(b) makes clear that the

22   filing of the petition is, in a voluntary case, is the order

23   for relief.  You know, I don't think I've misread it.  I've

24   looked at it several times.  I know I don't get to ask Mr. Tung

25   questions, but I'm baffled.

31

1          And moving on to his reply to the U.S. Trustee's

2    brief in support of the order to show cause.  Mr. Tung tries to

3    distinguish the Chatkhan case by saying his retainer was

4    different and there was no specific retention order which

5    specifically requires counsel shall be paid upon application to

6    the Court.

7          You know, first of all, there was similar language.

8    You know, it's not word for word, but in his retention order it

9    does say compensation shall be paid in such amounts as may be

10   allowed by the Court upon proper application thereof.  This is

11   similar language to what was in the Chatkhan case.

12         And as far as the retainer goes, that should be

13   disgorged.  He didn't -- it doesn't appear he drew down on the

14   retainer pre-petition.  I looked at the fee application.  It

15   starts the day before the filing, I believe March 23rd, goes on

16   to March 24th.  If you even totaled up those amounts, it's less

17   than $3,000.  So, there's no retention agreement.  There's no

18   retainer letter.  That money is property of the estate.  It's

19   exactly what happened in the Chatkhan case.

20         He needs to -- even if he's saying, and I don't agree

21   that he got paid by the principal, therefore he doesn't have to

22   file a fee app.  For the retainer, he drew down on that without

23   a fee app.  So, again, it just, I don't think he's grasping the

24   compensation and disclosure requirements in bankruptcy.

25         And then, you know, he does go on to state somehow

1 that we would have to show willfulness to sanction him, and

2 that is simply not the law.  It can be a negligent or

3 inadvertent failure.  You know, I'm not sure, it's hard to go

4 through the facts and say whether this was intentional or not.

5 There are certainly enough inconsistencies to surmise that this

6 was intentional, but there's no one fact there.

7          And also in arguing about fees after the case was

8 converted to a Chapter 7, Mr. Tung seems to blame this Court

9 because he states the Court never informed counsel that it had

10 to make a new application.

11          He goes on to argue that the Code gives a

12 debtor-in-possession the same rights as a bankruptcy trustee

13 under 1107(a) and 327(a), therefore it gives a

14 debtor-in-possession, with Court approval, the right to employ

15 counsel.

16          And while that statement is true, he apparently

17 didn't look at the case we cited in our papers, which is <u>Lamie</u>,

18 which is a Supreme Court case, so it's hard to argue your way

19 around that, and that once a case is converted, you have to be

20 hired by the trustee to be compensated and you're not counsel

21 under 327(a) when you represent a debtor in a Chapter 7 case.

22          So, I'm not sure if he didn't read <u>Lamie</u>, doesn't

23 understand it, but he just doesn't seem to realize that in a

24 Chapter 7 he has to be hired by the trustee or he can't be

25 compensated.

1          And I don't, you know, again, that's, maybe it's

2    $1500 at most at issue in this case, but that cannot be

3    included in this fee app, even if Your Honor was to rule that

4    he should be allowed some fees.

5          In sum, Mr. Tung's actions in this case violated

6    Bankruptcy Code Sections 330, 329, Federal Rule 2016(a) and

7    (b), and his own retention order.  Mr. Tung's responses include

8    misstatements of law and fact.  His fee application should be

9    denied and he should be ordered to disgorge all funds received

10   in this case.

11         THE COURT:  Where, if there is a disgorgement, where

12   do the fees go?  Where does the $19,400 go?

13         MR. HAUSMAN:  It goes back to the party that paid the

14   fees.  The $3,000, which was paid by the debtor, should go back

15   to the trustee and the 19,000 should go back to the --

16         THE COURT:  Debtor's principal?

17         MR. HAUSMAN:  Debtor's principal.  And that's

18   pursuant to 329, the subsection.

19         THE COURT:  That talks about I guess where the fees

20   come from.  What about conflict?  You touched on it.  I raised

21   the issue, but what's the position as to whether there was a

22   conflict in the case?

23         MR. HAUSMAN:  I believe, Your Honor, I'm not sure, I

24   think there's two different situations for conflict.  I'll try

25   to address both.

1       One is, what I looked at more, whether he disclosed

2  this at the beginning of the case, whether he would have been

3  disqualified.  And, Your Honor, that's a tough question.  I

4  will say, I don't think that question needs to be answered for

5  you to make a ruling, but I understand you've asked the

6  question, I will give you an answer.

7       THE COURT:  That's a hard one, because that's an

8  examination of the issues after the time, and we are looking

9  backwards.

10      MR. HAUSMAN:  Given that this is a true, and I

11 struggled with this and I was maybe hoping you wouldn't ask me

12 that question, but.

13                      (Laughter)

14      THE COURT:  Everybody hopes that when they're at the

15 podium.

16      MR. HAUSMAN:  I understand and I actually think given

17 that this is a true two party dispute, there's really no other

18 --

19      THE COURT:  Well, there was one, right?  Didn't we

20 get the taxing authority filing a claim in this case or

21 something?  It changed from a two party dispute, which it

22 originally was filed as a two party dispute, and then we

23 ultimately got another creditor.

24      MR. HAUSMAN:  I know there was MasterCard filed a

25 proof of claim because I went back and I didn't --

1          THE COURT:  My recollection is it changed from two

2    party to somebody else joining in.

3          MR. HOLT:  There were two other creditors and neither

4    of them ended up actually being creditors.  One was Wells Fargo

5    which was satisfied by the debtor's principal, I believe

6    involuntarily, Wells Fargo setoff against the debtor's

7    principal's account post-petition.  So, Wells Fargo was

8    satisfied.

9          And the Internal Revenue Service also did file a

10   claim, but they have since filed an amended claim which put it

11   at zero.  Because it is a single member LLC, the tax

12   obligations would flow through to the debtor's principal.  And

13   we contacted the Internal Revenue Service and offered to enter

14   into a consent or having the claim disallowed and instead I

15   believe, my recollection is that they filed an amended claim to

16   reflect a zero amount owed.

17         So, it is really just, well, I apologize, and this

18   might muck up the water just a little bit.  The debtor's

19   member, Ms. Kwan, filed a claim as a creditor, also, which I'm

20   going to have to deal with.  I haven't done it yet while this

21   is pending.  But, we don't think that that's a valid claim.

22         THE COURT:  But, she wasn't included on the filing

23   and she --

24         MR. HOLT:  She was not included on the filing and --

25         THE COURT:  Who filed that?  Who filed on her behalf?

36

1  Was it electronically filed?

2          MR. HOLT:  I don't know the answer to that, Your

3  Honor.

4          THE COURT:  Okay.  Do you recall the amount?  I can

5  look.

6          MR. HOLT:  No.

7          THE COURT:  I'm just curious as we sit here and we're

8  talking.

9          MR. HOLT:  Between 10 and 20,000, and I know it's a

10 relatively broad range.  It wasn't a real lot, but.

11         MR. HAUSMAN:  Possibly 19,400?

12         THE COURT:  I was just wondering that.

13         MR. HOLT:  It was not.

14         MR. HAUSMAN:  Your Honor --

15         MR. HOLT:  But, it goes, and I apologize for

16 interrupting Mr. Hausman, but, you know, I think it goes back

17 to the issue of whether, in fact, there is a conflict and

18 whether the interests of the single member are aligned with

19 that of the LLC if the single member is also asserting that it

20 is a creditor.

21         MR. HAUSMAN:  Certainly, Your Honor, if the single

22 member has filed a proof of claim.  But, with your hypothetical

23 question, what I can say is I know when the case converted to

24 Chapter 7, I believe Your Honor had issued an order to show

25 cause.  None of these, except for the Wells Fargo $8,000 some

odd amount, there were no other creditors listed in the proof

of claim.  It appears with the Chapter 7 maybe some other

creditors have arisen, but throughout the course of the Chapter

11, that wasn't there.

I think if this issue came up at the beginning of the

case, I would have tried to probe some facts as to whether Ms.

Kwan had some personal liability for this debt and that's where

I'd look to whether there could be a conflict or not.

THE COURT:  So, I'm looking at the proof of claim

which is Claim 5-1, which appears to have been filed by Ms.

Kwan on her own behalf, but I'm not sure.  But, what she

attaches are a list of fees that she paid on behalf of the

debtor, starting in March 2016 and continuing through August of

2017, which include accountant consulting fee, transcript, LLC

credit card interest, state registration fee, post office fee,

PSE&G, maintenance fee, maintenance fee, maintenance fee, for a

total of $7,466.83, as of September 22nd, 2017.

So, it looks like fees were being paid during the

pendency of the, or, I shouldn't say fees, by the, what was

attached, and the Court hasn't had to rule on the claim or

anything, I hear that there may be an objection that there were

alleged payments made post-petition on behalf of the debtor.

So, where does that take you back to, Mr. Hausman?

MR. HAUSMAN:  You know, certainly if --

THE COURT:  So, there were two that are pre-petition

1  that would create a creditor status as of the filing, because

2  they're dated 3/2016.  And, well, I'm not sure.  When was this

3  filed?

4          MR. HAUSMAN:  I believe in March of 2016.

5          MR. GERARDI:  March 24.

6          MR. HAUSMAN:  March 24th.

7          THE COURT:  March 24th.  So, there is no date, it's

8  just the month, so we don't know if this came in pre or post.

9  They could be post.

10          MR. HAUSMAN:  I mean, certainly, you know, this

11  wasn't filed until September of 2017, but, certainly, if she

12  was a creditor and Mr. Tung was getting paid by her as a

13  creditor, that would create a conflict of interest, but.  I

14  think she just -- there was a transcript.

15          THE COURT:  So, what date did you say this was filed?

16  On 3/24?

17          MR. HAUSMAN:  I'm just looking at the date stamp on

18  top.  Oh, when was the case filed?

19          THE COURT:  Yes.

20          MR. HAUSMAN:  March 24th, 2016.

21          THE COURT:  So, the post office receipt is actually a

22  2017 receipt.  I can't really tell from the attachments that

23  are here, but.

24          MR. HAUSMAN:  But, what is Your Honor referring to?

25  Not the petition from 2017?

1          THE COURT:  No, I'm looking at the claims.

2          MR. HAUSMAN:  Okay.

3          THE COURT:  The claims that were -- so, on her claim

4   there are a couple of attachments with some dates, but.

5          MR. HAUSMAN:  Oh.

6          THE COURT:  I, frankly, can't really make heads or

7   tail as to whether it's pre-petition or post-petition.  The

8   majority of what was listed was post-petition.  There were a

9   couple entries on the claim that are in March.  So, the issue

10  as to whether they're pre or post is still there.  But, if

11  they're post, we know what pre does, if they're post, then

12  what's the effect of that?

13         MR. HAUSMAN:  That certainly -- if she's -- well,

14  then she's becoming an administrative creditor and it raises

15  issues.

16         THE COURT:  Well, she actually filed a claim, so

17  she's -- is she an administrative creditor?  Has she made,

18  well, there we go back to the loan, or I guess it becomes a

19  loan if she's claiming that the money is owed to her.  So,

20  whether she's an administrative creditor or not, remains to be

21  seen because these are monies put into an estate without --

22         MR. HAUSMAN:  Without any type.  And we would

23  probably argue she's not an administrative creditor, that's a

24  capital infusion.  But, I mean the question I have is --

25         THE COURT:  This was just new.  I actually --

1          MR. HAUSMAN:  Yeah.  Why is she seeking an accountant

2    fees and, you know, it's hard because we don't know if these

3    are pre or post-petition, but why is she seeking the accounting

4    fees and not Mr. Tung fees?

5          THE COURT:  Right.

6          MR. HAUSMAN:  And I don't have an answer to that.

7    But, I was going to say, Your Honor, if this was disclosed at

8    the beginning, Mr. Tung might have well, very well been

9    retained.

10          But, getting into what Your Honor raised, which I

11   hadn't given a lot of thought to before the hearing, the fact

12   that he's receiving these payments and not reporting them on

13   the monthly operating reports, aside from not applying, you

14   know, I focused more on, quite frankly, he's receiving these

15   payments without following his retention order and 330, does

16   that create a conflict?  And I think that very well could.

17          And, you know, again, it's sloppiness, but the money

18   coming in that he's receiving, it should be known what that is.

19   To not have that come in and really not know what it is, and

20   not report it, I do very well think that could become a

21   conflict of interest, even though I don't think Your Honor

22   needs to find the conflict of interest to disgorge and deny the

23   fees based on the failure to disclose and the failure to file

24   for fee apps.

25          And the payments came in, I don't have the dates

41

1  memorized, I could look, but over a different period of time,

2  and May 4th, 2016, August 30th, 2017, so, you know, the

3  earliest there could have been a conflict is May 4th, 2016,

4  which is, you know, a few months after the case was filed.

5        And, again, I still, regardless of what they thought

6  it was, the fact that he's asking for her to be reimbursed at

7  this point, I mean, I'd be curious as to why he's requesting

8  that.  Did he have a conversation?  Why is she expecting to

9  receive the funds back?  Did he just do that to be a nice guy

10 or was there some request on her part?  I don't know and again

11 --

12        THE COURT:  So, I'm going to ask that question, Mr.

13 Tung.  When we come back to you, I'll want to know why you're

14 trying to pay the funds back.

15        MR. HAUSMAN:  And certainly with that request and the

16 fee app, if this case were still in Chapter 11 and that fee app

17 got filed, I would say that there's an actual conflict and he's

18 not disinterested and can't go forward.  But, at this point,

19 the case is a Chapter 7 and I don't view that as really being

20 relevant to Your Honor's decision, but.

21        THE COURT:  So, this was more -- I ask about the

22 conflict, it is another ground as far as disgorgement, but I

23 really asked also because I think that it impacts sort of

24 obligations under the RPCs.  And, so that was the Court's

25 question, for purposes of yes, it goes with 329 by itself,

42

1 could potentially be enough, but conflicts of interest raise

2 different areas of concern to the Court.

3        MR. HAUSMAN:  Your Honor, as I saw this as a, really

4 a bankruptcy lack of disclosure and failure to comply with

5 Code, I did look at the RPCs.  Whether there is a conflict

6 under 1.7 and possibly on May 4th of 2016 when he received the

7 payment, not report it, there could be.

8        But, I don't think Your Honor needs to go to the RPCs

9 to decide this matter.  Whether there's a referral to ethics,

10 you know, I was, quite frankly, waiting to see what happens at

11 this hearing and I'm not sure about that.  3.3, which Your

12 Honor cited, candor to the tribunal.

13        I think, from what I've heard and read in his papers,

14 Mr. Tung is trying to be up front with the Court, but his

15 misunderstandings of facts which he should control and the case

16 law combined, is really what I find the more outrageous

17 violations in this matter.

18        And, you know, to say that most of -- there were fee

19 -- a lot of -- most of the fees were incurred after the Chapter

20 7, to try to distinguish a case saying it does, you know, the

21 order provided there that they needed Court approval when his

22 order has that, it's just, it's baffling.

23        THE COURT:  Okay.  Thank you.  Mr. Holt?  Mr. Tung,

24 I'll hear from you after.  I'm going to let this side of the

25 table speak and then I'll come back to you.

43

1          MR. HOLT:  Thank you, Your Honor, and I'll be brief.

2    I was making a note when Your Honor raised the point at the

3    same time I was writing it down, which is that Mr. Tung seems

4    to not understand that there's a distinction between a debtor

5    and a debtor's estate and that once you come into the

6    Bankruptcy Court and once you file that Chapter 11 petition,

7    the principals, the officers of the debtor and the debtor's

8    attorney, are acting as fiduciaries for the debtor's estate.

9          And what may be in the best interest of the debtor or

10   the debtor's sole member in the case of a single member LLC,

11   may not necessarily be in the best interest of the debtor's

12   estate.

13         And that's why they have the disclosure requirements.

14   That's why it's there, so the Court can make that

15   determination, so it can be reviewed by a third party to weigh

16   in before, as Mr. Hausman said, we end up here at the wrong end

17   looking back.

18         And it's not up to the debtor's attorney or up to the

19   principal of the debtor to decide whether there's a conflict.

20   That's a determination for the Court to make after there is

21   full disclosure.  And there wasn't full disclosure.  And, you

22   know, looking back at it in hindsight, it's unfortunate.

23         But, it's not the responsibility of the Court to

24   figure this out.  It's not the Court's responsibility to get a

25   fee application that says, hey, wait a second, it looks like

1 this person was paid during the Chapter 11 case and it wasn't

2 disclosed.  That's not the way it's supposed to work.

3         The cases that the Chapter 7 trustee has cited to,

4 and I'll point out as Your Honor indicated and Mr. Hausman

5 indicated, that an attorney who fails to comply with the

6 disclosure requirements, forfeits any right to receive

7 compensation for services rendered on behalf of the debtor and

8 may be ordered to return fees already received.

9         And there are cases that say that total disgorgement

10 is sort of the ultimate sanction and leave it to the Court's

11 discretion, and I think that's appropriate as well, but the

12 cases are uniform that the disclosure requirements are

13 mandatory.  They're not discretionary and negligence or

14 inadvertence is not an excuse for not complying with them.

15         And I think, Your Honor, it goes back to, as I said

16 before and as Your Honor was asking Mr. Tung, there is a

17 distinction between what may be in the interest of the debtor

18 or the debtor's estate and what may be in -- of the debtor and

19 the debtor's principal, and what may be in the interest of the

20 debtor's estate, because the debtor-in-possession and the

21 professionals for the debtor-in-possession, act as a fiduciary

22 for the estate.

23         Unless Your Honor has any questions, that's all I

24 have.

25         THE COURT:  I don't.  Thank you.  Mr. Tung?

1          MR. TUNG:  Yes, Your Honor.  I have heard the

2    arguments and I forgot to point out several things that I have

3    to point out, I think I have to point out to the Court.

4          The $19,400, is that the figure, right, if I don't

5    remember wrong.  The $3,000 is included there, so it's not

6    included in the $19,000, right.  So, the 16, 400 will be paid

7    by the debtor's principal.

8          Number two, Your Honor, I believe the case law goes

9    both ways.  If the trustee says that at the time the case was

10   converted to Chapter 7, Mr. Tung is not entitled to legal fees

11   because, I mean, because he didn't apply for -- he didn't put

12   in the application before, he has to do this again.  Which I

13   agree with the case law he cited, okay.  I'm not disputing.

14         But, what I'm saying now, is I have heard that the

15   Court tried to figure out the conflict, so I have to argue.

16   Because interest before the case was converted to Chapter 7,

17   there was no conflict of interest, as I have perceived, as I

18   have argued before, they're a united interest and there's

19   nothing wrong.

20         But, after the case was converted to Chapter 7, yes,

21   because there is possible conflict.  But, if the attorney at

22   that point in time has not made the application is, of course,

23   is not getting paid by the Court, is not getting paid -- is not

24   getting paid.  In fact, he wasn't paid by the member, by the

25   single member anymore.

1           So, at that point in time, after the case was

2    converted to Chapter 7, there's no conflict of interest.  Is

3    not even making application.  Is just working.  I don't even

4    know if he's the attorney for the debtor because the trustee

5    can appoint, not I can't appoint myself to be the debtor's

6    attorney.  So, the conflict is --

7           THE COURT:  Wait.  You confused me.  So, I thought

8    you said before conversion, no conflict; after conversion,

9    there is a conflict.

10          MR. TUNG:  There is a potential conflict.

11          THE COURT:  Oh.

12          MR. TUNG:  But, that doesn't apply to my case because

13   I never put in the application.  I was not appointed by the

14   trustee.  And, so, even if the debtor puts in a claim, right, a

15   claim for compensation, that has nothing to do, not only to do

16   with me, but, I mean, basically all I'm trying to say, the

17   conflict of interest may arise after the case was converted to

18   Chapter 7, but in this case, it shouldn't be taken into

19   consideration in the fee application.

20          Otherwise, but, yes, I agree, already agree, Chapter

21   7, I didn't put in the application, so the $1500, as the

22   trustee pointed out, right, I'm not entitled to, to be

23   compensated, right.  So, that's fine.  That's fine.  So, like I

24   told you before.  But, the question most fees --

25          THE COURT:  So, the 1500 is off the table.  You agree

1 that anything --

2         MR. TUNG:  Yes, yes, yes.  But, I'm saying, at that

3 point in time, even if there is a conflict or if there is no

4 conflict, it has nothing to do with me because I'm not even the

5 attorney appointed by the trustee.  I'm not even sure if I am

6 in fact the attorney for the debtor after Chapter 7, after the

7 case was converted because nobody has hired me though after

8 that point though.

9         Even though I said nobody informed me, but for if

10 anything has to be done, I mean to be, I mean if anything has

11 to be taken into consideration, the line draws at the time when

12 it was converted to Chapter 7.

13         As I pointed out to the Court, at the time when the

14 petition was filed for Chapter 11, we never anticipated, we

15 never anticipated the case was -- will be converted to Chapter

16 7.  And what's the other part I have to --

17         THE COURT:  I have the question --

18         MR. TUNG:  Yes.

19         THE COURT:  -- of why you were expecting to pay the

20 funds back?

21         MR. TUNG:  Oh.  Oh, yes.  Yes, that's the question I

22 have to answer.  As I told you, Your Honor, before, when the

23 case was converted to Chapter 7, now all of a sudden all these

24 questions raised, right.  She even puts in the notice of claim

25 for the services she had rendered before.

48

1          So, I honestly told you before, I informed the Court

2     before, I didn't know how to categorize.  I mean, afterwards,

3     afterwards, when something had happened before, now she's, I

4     mean now the debtor is, I mean, principal is saying that the

5     money I pay on behalf of the company, right, could be

6     retrieved.

7          I don't have the answer, so that's why we disclosed

8     and applied and let the Court to decide.  If the Court decides

9     the money shall be -- shall not be -- if the money shall not be

10    paid, should not be, I mean should not be disbursed or charged

11    to the estate, it be that way.  It was never intended to.

12         So, that's why we didn't have the -- I didn't, I

13    mean, the answer was, we didn't know how to category this

14    amount at the time when the case was converted to Chapter 7.

15         THE COURT:  So, to summarize, you're saying that the

16    debtor's principal asked for the money back after the

17    conversion?

18         MR. TUNG:  She didn't really, I cannot disclose the

19    conversation, the details, but she didn't really --

20         THE COURT:  She's not your client, the debtor is the

21    client, and there's a Chapter 7 trustee and I don't want to

22    raise -- the Chapter 7 trustee owns the debtor's principal,

23    privilege rather.

24         MR. TUNG:  All right.  Yes, okay, there is no

25    privilege here.  Then, she didn't ask for the money back, okay.

1   She didn't specifically ask for the money back.  But, she did

2   ask if we can put in the application because just like the

3   other fees that's incurred.

4          THE COURT:  Well, how is that not asking?  If you put

5   it in the application, if she asked you to put it in the

6   application, how is that not asking?

7          MR. TUNG:  Well, basically we'll just let the Court

8   decide.  That is the position.  We didn't know.

9          THE COURT:  These are amorphous answers for me.  I'm

10  not getting any concrete information from you.  You don't know

11  how to characterize it, you don't know why you asked for it,

12  you just leave it to the Court.

13         MR. TUNG:  We try to see, basically at that point in

14  time the case was converted to Chapter 7, we did the

15  application, yes, we did the application, and see if the Court

16  will award the legal fees, okay, so to reimburse her that's,

17  but, that's only after the case was converted to Chapter 7.

18         THE COURT:  Because if the case had stayed in 11,

19  there would have been no request.

20         MR. TUNG:  Never, never, because --

21         THE COURT:  And the Court would not have known.

22         MR. TUNG:  Well, I wouldn't say the Court would never

23  know.  Like I told you before, it may be disclosed in the

24  disclosure plan, if there was ever one.

25         THE COURT:  So, if the debtor filed a plan and

50

1 disclosure statement, that is the time where counsel would have

2 disclosed the monies that had been paid through the case?

3          MR. TUNG:  But, she's now seeking for reimbursement

4 if -- but there was a section --

5          THE COURT:  "She" being debtor's principal?

6          MR. TUNG:  Right.  But, she's now seeking for

7 reimbursement, but there will be a section describing how

8 debtor's counsel fees are compensated.  And that's why there's

9 a difference between the Court would never know and the fees

10 are not, the fees paid by the principal were not disclosed.

11 Your Honor --

12          THE COURT:  Do you know anything about the proof of

13 claim that was filed by debtor's principal?

14          MR. TUNG:  I don't know remember.  I don't remember.

15 Offhand.

16          THE COURT:  Pardon me?

17          MR. TUNG:  I don't remember offhand.

18          THE COURT:  Did you help with that or did she do that

19 on her own?

20          MR. TUNG:  I don't think I personally helped.

21          THE COURT:  Did your office, did KKT help with the

22 proof of claim?

23          MR. TUNG:  Not to my knowledge, but I cannot answer

24 if anyone else helped, but not to my knowledge.  I didn't help.

25          THE COURT:  Who else in your office worked on the

51

1  case?

2        MR. TUNG:  There are two associates.  One was Ms.

3  Wang, but she's already left the firm.  And there is another

4  person but, Ms. Yang, but she didn't work on the bankruptcy

5  case.  I think she only helped me to work on the opposition to

6  the order to show cause.

7        THE COURT:  Who worked on the bankruptcy case in KKT?

8        MR. TUNG:  Ms. Wang, but she's already left the firm

9  three, two or three years ago.  I don't know when.  She left

10  the firm already.  She did the petition.  She disclosed, I

11  think she disclosed her name somewhere.

12        THE COURT:  So, Ms. Wang prepared the petition.

13        MR. TUNG:  The petition, yes.

14        THE COURT:  Did she do anything else in the

15  bankruptcy case?

16        MR. TUNG:  I think she prepared motions for the stay,

17  the motion for stay, stay proceeding, lift the stay, and

18  permission to appeal.

19        THE COURT:  And then after that she left?

20        MR. TUNG:  She left the firm, yes.

21        THE COURT:  Mr. Hausman, you're standing?

22        MR. HAUSMAN:  Your Honor, just she did put in 78

23  hours and about $15,000 worth of work according --

24        THE COURT:  Okay.

25        MR. TUNG:  Yeah, she did disclose this.

52

1          THE COURT:  Thank you.

2          MR. TUNG:  I don't know, Your Honor, if there's

3 anything that you need my answer or explanation.

4          THE COURT:  No, I don't think so.

5          MR. HAUSMAN:  Your Honor, I just do want to point one

6 thing out that I think adds to the confusion of this a little

7 bit and I hadn't -- I didn't pull that $19,400 number out of my

8 hat, that was his request in the fee application.

9          So, not only was he requesting the money back that

10 Ms. Kwan paid him individually, he's also requesting back the

11 $3,000 retainer that the debtor paid him to pay that back to

12 Ms. Kwan.  If he's correct, that 19,000 also includes --

13          THE COURT:  Thank you.  I didn't even pick that up.

14          MR. HAUSMAN:  I didn't --

15          THE COURT:  That's why we thought -- so, that's why

16 we thought that it was 3,000 plus 19, 4 because he received a

17 retainer and why would that be paid back or paid.

18          MR. HAUSMAN:  But, I'll do the math, but I'm just

19 going on the statement he made that that includes the $3,000,

20 so.

21          MR. TUNG:  Your Honor, I just have one thing to add.

22 Yes, the most fees incurred in Chapter 11, but the, you know,

23 some of them are not paid because payment and fees is always

24 there's a lack and you don't pay -- so, until the moment the

25 case was converted to Chapter 7, I didn't receive fees, so

1  therefore I receive application to cover the fees in Chapter

2  11.

3           THE COURT:  Well, you did receive the $3,000 retainer

4  prior to filing the bankruptcy.

5           MR. TUNG:  Correct.  Correct.

6           THE COURT:  And that was paid by the debtor.

7           MR. TUNG:  That was paid by the debtor and that was

8  disclosed in the monthly statement.

9           THE COURT:  So, why does the 19,400 that is being

10 requested to be paid, include the 3,000?  Mr. Hausman just

11 brought that up and that doesn't make sense because the debtor

12 paid $3,000.  The 19,400, which is the subject that brought us

13 here today, why does that include the retainer?

14          MR. TUNG:  Maybe, maybe we thought the money was from

15 single member, it's also in her pocket, so she wants to get

16 everything back for legal fees.

17          THE COURT:  "Maybe" is another one of those answers.

18 Every -- so many of the answers that you've provided to me

19 today are unclear and not precise.  And that's part of the

20 reason why we're here today, because the last time we had a

21 hearing I didn't understand you.  But, how is a Court to take

22 an answer that is "maybe?"

23          MR. TUNG:  The money for --

24          THE COURT:  Maybe it will rain today.

25          MR. TUNG:  Yeah, the $19,000 was paid from her

54

1 pocket.

2       THE COURT:  19,400.

3       MR. TUNG:  Yeah.

4       THE COURT:  Well, the retention application indicates

5 that $3,000 was paid by the debtor.

6       MR. TUNG:  Well, that meant paid out of her pocket is

7 because $3,000 was paid by the debtor.  But, at the time, she

8 considers debtor's company, the money is her own money, because

9 it's the same company, they do not file separate tax returns.

10 So, she considers she paid out $19,000, $19,400.

11       THE COURT:  So, you as counsel though, know that the

12 money came from the debtor.  How taxes are treated is one

13 thing.  But, you told the Court that the debtor paid 3,000.

14 So, why include it in an amount that, and I make air quotes, is

15 to be repaid to debtor's principal?  It just, it doesn't make

16 sense.  This doesn't make sense to me.

17       MR. TUNG:  This is what happened.  This is what

18 happened.  We didn't like, we didn't, I mean, we didn't

19 misrepresent the Court.  This is all the money she paid from

20 herself.

21       THE COURT:  So, who wrote the check for the $3,000?

22       MR. TUNG:  The $3,000 is coming from the debtor's

23 company.

24       THE COURT:  Okay.  And then 16,400 was the amount of

25 the --

55

1          MR. TUNG:  That was from personal.

2          THE COURT:  -- the checks written from debtor's

3   principal.

4          MR. TUNG:  Personal.  Personal checks, yes.

5          THE COURT:  Okay.

6          MR. TUNG:  The $3,000 was disclosed, that's what I'm

7   trying to say, is that was disclosed.

8          THE COURT:  Okay.  Okay, as in if you have anything

9   else you can add it, not okay that I'm agreeing with you,

10  because I have to get my calculator again.

11         MR. TUNG:  I don't have anything to add.

12         THE COURT:  Does anybody else have anything further?

13                 (No audible response)

14         THE COURT:  And I'll wait a minute because I see that

15  counsel for the U.S. Trustee is consulting.

16         MR. HAUSMAN:  Your Honor, we were just looking at the

17  $3,000 check.  We do have a copy of the front of the check, and

18  it actually -- but, there is no identification if it's a

19  business or personal account, but the rest of the checks are

20  from her individually, Ms. Kwan, and it is a different account

21  number than what was on that other check.  So, it would appear

22  that -- at least it's a different account.

23         THE COURT:  Okay.

24         MR. HAUSMAN:  That's just what we were discussing,

25  but.

**WWW.JJCOURT.COM**

1          THE COURT:  All right.  Does anybody have anything

2    further?

3          MR. TUNG:  I think he just clarified that --

4          THE COURT:  I don't know who "he" is.

5          MR. TUNG:  He's Robert Browning.

6          THE COURT:  Excuse me?

7          MR. TUNG:  Robert Browning.  Okay.  He just clarified

8    that check when he said there is no add on.  This is Wells

9    Fargo, from Wells Fargo bank, and that bank account paid for

10   that debtor or that.

11         MR. HAUSMAN:  Your Honor, could we identify --

12         THE COURT:  Take a break?  Oh.

13         MR. HAUSMAN:  It's a Wells Fargo account.  It does

14   say Wells Fargo.  It doesn't say -- it's not identified if it's

15   an individual or a corporate check, but there is a Wells Fargo

16   -- it is a Wells Fargo check.

17         THE COURT:  Okay.

18         MR. HAUSMAN:  But, I just didn't understand.  If you

19   could just clarify who is in the court with him because, you

20   know, one of my concerns depending on Your Honor's ruling, and

21   I don't want to jump to conclusions, is, you know, is Ms. Kwan

22   aware and how we make her aware with the order of what she will

23   receive back.  And I just didn't understand who was in court

24   giving that answer.

25         MR. TUNG:  Ms. Kwan is not in the country.  She's in

57

 1  China present.

 2          MR. HAUSMAN:  But, who is in court?  I just didn't --

 3  is that --

 4          MR. BROWNING:  Robert Browning.

 5          THE COURT:  No, we don't -- you can tell us.  You

 6  tell us.

 7          MR. TUNG:  Oh.  This is, as far as I know, is a

 8  friend of Ms. Kwan.

 9          MR. HAUSMAN:  Okay.

10          THE COURT:  So, and he was also part of the

11  underlying State Court action, if I recall?

12          MR. TUNG:  Correct, yes.

13          THE COURT:  Go ahead, Mr. Holt.

14          MR. HOLT:  Your Honor, Mr. Browning's presence in

15  court and giving information, if not guidance to Mr. Tung, is

16  very concerning to me and I think it should be concerning to

17  the Court.  And it goes back to the issue about disclosure and

18  conflicts and who this case was really being run for and

19  whether Mr. Tung's retention would have been approved in the

20  first instance.

21          I have knowledge regarding Mr. Browning's role in

22  this, only as a result of filings that were made by Mr. Tung

23  after the conversion of the case to Chapter 7.

24          However, the incident that gave rise to the claim

25  that was filed by Armando and Melinda Flores involved a

1 judgment that was entered against the debtor as a result of

2 actions taken by Mr. Browning against Mr. and Mrs. Flores,

3 which my understanding based on pleadings that I've reviewed in

4 the case, the purpose of the Chapter 11 filing was to obtain

5 the stay so that they could file an appeal of the underlying

6 judgment.

7          Now, whether Mr. Tung and Mr. Tung's law firm were

8 acting in the best interest of the debtor's estate or the

9 debtor or the debtor's principal or a friend of the debtor's

10 principal, goes back to the whole issue of whether there should

11 have been disclosure and whether there potentially was a

12 conflict.

13          And I think Mr. Browning's presence here today just

14 highlights for me the fact that there needed to be disclosure.

15 And whether the actions that were taken by Mr. Tung and by Mr.

16 Tung's firm, post-petition, really were in the best interests

17 of the bankruptcy estate or other third parties.  And with

18 respect to --

19          THE COURT:  Because I recall that at the time of

20 retention I thought in the Chapter 11 it was to pursue the

21 debtor's interests in the appeal.  Am I right, Mr. Tung?

22          MR. TUNG:  Yes.

23          THE COURT:  Okay.

24          MR. TUNG:  Yes, because that's the only hope for the

25 debtor if the case is reversed against the debtor's company.

1  And, Your Honor, I also have to just let the Court know.  Mr.

2  Browning didn't give me parlance or instructions.  All he did

3  was to clarify that check for the Court.  The check, the $3,000

4  check, and title of check.  That's all.  He didn't -- I did not

5  listen to him for any advice, any guidance, so.

6           THE COURT:  You've got to face the microphone.

7           MR. TUNG:  So, I don't want counsel, I don't want

8  somebody else coming to tell me that I was listening to

9  guidance, instructions, or anything else from Mr. Browning.

10 You can ask Mr. Browning.

11          THE COURT:  But, you did consult with Mr. Browning

12 regarding the check that was --

13          MR. TUNG:  Just to clarify the check was from the

14 company, from Wells Fargo, that's all.

15          THE COURT:  Okay.

16          MR. HOLT:  And I believe what I said was whether he

17 was receiving instruction or information.  I didn't overhear

18 what they said and I wouldn't mean to imply otherwise.  But, it

19 still gives me concern regarding on whose behalf Mr. Tung was

20 acting in this matter.

21          And finally, Your Honor, with respect to claims filed

22 by Ms. Kwan individually and whether Mr. Tung and Mr. Tung's

23 firm's application for compensation sought to reimburse Ms.

24 Kwan for those funds that were advanced, I think the

25 application clearly says that's what it's for and it goes back

1  to the disclosure requirements.

2        Were these infusions of capital?  Were they loans?

3  There are requirements when you ask for the protections

4  afforded by the Bankruptcy Code, and among those requirements

5  are disclosure to the Court.  And how is the Court supposed to

6  know whether these are loans or whether these are infusions of

7  capital?  And what if Ms. Kwan changes her mind?

8        The way I'm hearing what Mr. Tung is saying is that,

9  well, if a plan was confirmed, then she wouldn't have sought to

10  be reimbursed for these amounts, but because the case

11  converted, she is.

12        So, apparently the conversion of the case was the

13  deciding factor on whether they were infusions of capital or

14  whether they were loans.  And the bottom line is that they were

15  never disclosed.

16        THE COURT:  And would the infusions of capital have

17  been disclosed?

18        MR. HOLT:  An infusion of capital should have been

19  disclosed, Your Honor, and in Mr. Tung's defense, you know,

20  maybe it was by way of a disclosure statement that said during

21  the case the debtor, the debtor's principal infused X amount.

22        THE COURT:  But, would that have shown --

23        MR. HOLT:  As a bankruptcy practitioner, I think the

24  safer way to go would be to get an order authorizing the

25  debtor's principal to infuse capital, but I don't know off the

61

1  top of my head if there's a requirement for that.  I do know

2  that there's a requirement that you get permission for loans.

3        THE COURT:  But, would the infusion of capital have

4  to show on the monthly operating report?

5        MR. HOLT:  It should have shown on the monthly

6  operating reports as income from some source, whether it's an

7  infusion of capital or from operations.

8        THE COURT:  Okay.

9        MR. TUNG:  Your Honor, can I respond to that point?

10        THE COURT:  Yes.

11        MR. TUNG:  So, Your Honor, if it is not shown on the

12  monthly statement, so the assumption should be it is not

13  infusion of capital.

14        THE COURT:  So, you would like the Court to assume

15  that it is not an infusion of capital?

16        MR. TUNG:  Yes.

17        THE COURT:  Because it did not show on the monthly

18  operating report?

19        MR. TUNG:  Right.

20        THE COURT:  So, you would like the Court to go back

21  to the assumption, because you changed your mind in this

22  argument, that it was a loan to the debtor?

23        MR. TUNG:  It was not a loan.

24        THE COURT:  So, what was --

25        MR. TUNG:  It's a gift.

62

1          THE COURT:  It was a gift to the debtor.

2          MR. TUNG:  Yes.

3          THE COURT:  So, if it's a gift to the debtor -- do
4 you understand what you're saying by saying that it was a gift
5 to the debtor?  It's still income.  It doesn't -- are you
6 saying that a gift would not have had to show on the monthly
7 operating report?

8          MR. TUNG:  Well, I'm not saying --

9          THE COURT:  Be careful what you're saying because --

10          MR. TUNG:  Your Honor, I'm not saying it's a gift.
11 All I'm saying is just for the fact --

12          THE COURT:  Mr. Tung.

13          MR. TUNG:  Yeah.

14          THE COURT:  Stop for a second, because you're only
15 going to dig your hole deeper.  Understand what you're saying
16 because you've changed the characterization from the last
17 hearing to this hearing, and before this hearing is over you're
18 ready to say something else because you think it works.

19          MR. TUNG:  Your Honor --

20          THE COURT:  And if it's a gift to the debtor and the
21 Court orders that money to be disgorged, it goes to the Chapter
22 7 trustee.

23          MR. TUNG:  Yes, Your Honor, I withdraw that
24 statement, okay.  I withdraw.

25          THE COURT:  So --

1    MR. TUNG:  All I'm saying is, as I repeated before,

2 it was money paid by a third party to the --

3    THE COURT:  Mr. Tung, do you understand, do you

4 understand the rules and requirements of being in Chapter 11?

5 You are jumping all over the place.  You say whatever comes to

6 you at the moment.  I've got to tell you, the longer the

7 hearing goes, the worse it is.  Every time you stand up it gets

8 worse and it's troubling.  No, Mr. Hausman, go ahead.  I'm

9 sitting here rather stunned by what you have done in this

10 hearing today.  Go ahead.

11    MR. HAUSMAN:  Your Honor, I just want to clarify my

12 earlier statement.  It dawned on me that if, at the beginning

13 of the case it was disclosed that -- general rules for the U.S.

14 Trustee, if a principal of a closely held corporation pays the

15 retainer, we generally, look, everything's fact specific, we

16 generally do not object.  If there is any type of commitment,

17 personal guaranty to pay fees going forward, we do object.  Do

18 we win every case?  No, but as I said, I'm talking a general

19 rule.

20    So, when I said to Your Honor, just looking at the

21 relationship maybe there wasn't a conflict.  But, if it was

22 disclosed that the principal would be paying the fees on a

23 going forward basis, this office would most likely have filed

24 an objection.

25    THE COURT:  Okay.  Does anybody have anything else to

64

1 add?

2       MR. HAUSMAN:  Your Honor, just as I had said during

3 my papers, I think there were a number of inconsistencies in

4 the replies that I pointed out.  I believe they have continued

5 during this hearing.

6       It's confusing as to what the underlying facts are

7 and I think he -- he says in a number, in his papers, and he

8 says it in court today, if the case would have never been

9 converted to Chapter 7, we wouldn't have put in for the fees.

10       Not only does it not make sense, but it seems to

11 highlight to me that he can't distinguish or was looking in the

12 best interest of the individual, because if the case remained

13 in Chapter 11, I guess Ms. Kwan still would have owned the

14 house so there's no need to reimburse her individually.  So,

15 it's just another fact to me that he either can't distinguish

16 or was representing the interests of the individual.

17       THE COURT:  Thank you.  Anything else?

18       MR. TUNG:  No, Your Honor.

19       THE COURT:  So, the Court isn't prepared to rule

20 today because I have received inconsistent statements today

21 than what's been set forth in the pleadings.  And I leave the

22 bench troubled, I'm going to say that.  I will issue a decision

23 that is a result of the order to show cause and ties into the

24 fee application that was filed.

25       But, Mr. Tung, I'm going to tell you that I'm

1  somewhat surprised by how you appeared in court today because

2  certainly if the Court on its own had issued an order to show

3  cause such as I did, I think I would have read every case and I

4  would have slept with the Bankruptcy Code in the sense of

5  absorbing every aspect of it that I could, so that I could walk

6  into court and be contrite for not understanding the rules and

7  procedures and statutory authority that govern bankruptcy

8  cases.

9         And instead you came in here very defensive, flip

10 flopping in your statements, throwing the issues to the Court

11 to figure it out, and really, while you may think it was

12 helpful, I can tell you, remaining unhelpful as the Court has

13 to broach the decision of what to do about your representation

14 and the fee application and the fees that you received.

15        Attorneys that come to court and show contrition and

16 show the Court that they've done what they could to do better

17 moving forward, usually, you know, end up okay.  Sometimes

18 there are balancing factors that the Court has to look at, but

19 I saw none of that, I saw none of that today, and that's what I

20 was looking for.

21        And I don't want to hear from you.  I'm not ruling.

22 I'm talking to you.  The hearing is over, I've closed the

23 arguments.  But, I came in here hoping to see someone that

24 understood what we do in bankruptcy court, and I leave here

25 understanding that you're not that person, that you really,

1 really don't understand the laws that govern a bankruptcy

2 proceeding, and are willing to do that which you think is okay

3 without giving any attention to the guidelines and the law that

4 we operate under.

5          And that is very troubling because on this instance

6 it's an impact of fees, but who knows what you will do in the

7 future?  And those are the things that the Court's going to

8 leave, when I leave the bench today, that I have to consider in

9 making my decision because it is mind boggling as to what you

10 have said to me, what your defenses are, and what your lack of

11 understanding remains, even after explanations have been given.

12          It is as if you just didn't bother to take a look at

13 the things that were mentioned and rather than perhaps fessing

14 up to the Court that you made a mistake, you were prepared to

15 just waffle around the issue and never give the Court an

16 answer.

17          And so I'll leave here, because you said you leave it

18 to the Court to figure it out or in the Court's discretion, and

19 I'll use my discretion when I do that at the end.  But,

20 understand that this hearing and the upcoming decision may have

21 gone differently based upon what you presented to the Court

22 today.  And I think you can tell from my words that the opinion

23 that is going to come out probably will not reflect very well

24 on your behavior.

25          So, I thank the parties for their arguments and the

1  pleadings, and I'll issue a decision.

2          MR. HAUSMAN:  Thank you, Your Honor.

3                    * * * * *

4             **C E R T I F I C A T I O N**

5          I, JANET D. PERSONS, court approved transcriber,

6  certify that the foregoing is a correct transcript from the

7  official electronic sound recording of the proceedings in the

8  above-entitled matter, and to the best of my ability.

9

10  /s/ Janet D. Persons

11  JANET D. PERSONS

12  J&J COURT TRANSCRIBERS, INC.    DATE:  July 9, 2019

13

14

15

16

17

18

19

20

21

22

23

24

25