**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

Order Filed on April 6, 2020
by Clerk,
U.S. Bankruptcy Court
District of New Jersey

_____
                                          :

In re:                                         :

                                         :     CHAPTER 7

38-36 Greenville Ave L.L.C.,        :

                                         :     CASE NO.:    16-15598 (SLM)

            Debtor.          :

                                         :
_____ :

## OPINION

**APPEARANCES:**

Kevin Kerveng Tung, Esq.
Kevin Kerveng Tung, P.C.
136-20 38th Avenue
Suite 3D
Flushing, NY 11354
*Attorney for 38-36 Greenville Ave L.L.C.*

Michael E. Holt, Esq.
Forman Holt, LLC
66 Route 17 North
Paramus, NJ 07652
*Attorneys for the Chapter 7 Trustee, Charles M. Forman*

Mitchell Hausman, Esq.
United States Department of Justice
Office of the United States Trustee
One Newark Center, Suite 2100
Newark, NJ 07102
*Attorneys for Andrew R. Vara, Acting United States Trustee, Region 3*

**STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

## **INTRODUCTION**

The Court is presented with the undesirable circumstance of being asked to approve the fees of an attorney who put his personal pecuniary interests ahead of his fiduciary duties and professional obligations, which resulted in a breach of those duties and obligations. Before the Court is the Court's *Amended Order to Show Cause as to Why This Court Should Not Issue Sanctions Against Kevin Kerveng Tung, P.C. and Kevin K. Tung, Esq., in His Individual Capacity, for Potential Violations of the New Jersey Rules of Professional Conduct, the United States Code, and the Federal Rules of Bankruptcy Procedure* (the "**Second OSC**")[1] that the Court issued because of questions arising from the *First and Final Fee Application of Kevin Kerveng Tung, P.C. for Preofessional [sic] Services Rendered and Reimbursement of Expenses Incurred and Posted as Counsel for 38-36 Greenville Ave LLC. [sic] During the Period from February 9, 2016 to October 10, 2017* (the "**Fee Application**") submitted by Kevin Kerveng Tung, P.C. ("**KKT**"), the law firm of record for debtor 38-36 Greenville Ave L.L.C. (the "**Debtor**").[2] Importantly, the Court's questions stem from the Fee Application's indication that KKT intends to pay $19,400 of its fees to the Debtor's principal, Lingyan Quan (the "**Debtor's Principal**") on account of compensation the Debtor's Principal paid to KKT post-petition (the "**Undisclosed Payments**").[3] The Fee Application provides no further information about the payments nor why $19,400 is due to the Debtor's Principal. The Court held a hearing to resolve these questions. The answers provided were wholly unsatisfactory leaving the Court with only one choice—complete denial of

---

[1] Docket No. 125. The Second OSC amended the *Order to Show Cause as to Why This Court Should Not Issue Sanctions Against Kevin Kerveng Tung, P.C. and Kevin K. Tung, Esq., in His Individual Capacity, for Potential Violations of the New Jersey Rules of Professional Conduct, the United States Code, and the Federal Rules of Bankruptcy Procedure*, Docket No. 124.
[2] Docket No. 100.
[3] Docket No. 100 at 16–17.

KKT's fees and disgorgement of any fees received in this case on behalf of the Debtor and a referral of this matter to the Chief Judge of the District Court.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(1), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 and amended September 18, 2012.  This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of the bankruptcy estate.  Venue is proper under 28 U.S.C. § 1408.  Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court issues the following findings of fact and conclusions of law.

## BACKGROUND AND PROCEDURAL HISTORY

On March 24, 2016, the Debtor filed a voluntary Chapter 11 petition for relief under Title 11 of the United States Code (the "**Bankruptcy Code**").[4]  The Debtor is a single-member limited liability company, who at the time of filing, owned a six-family house located at 38-36 Greenville Avenue, Jersey City, New Jersey (the "**Property**").  The Debtor's Principal is the Debtor's 100% equity security holder.[5]  Armando Flores and Melinda Flores (the "**Flores Creditors**") are the only creditors listed in the Debtor's schedules in the amounts of $1,265,893.16 and $583,244.44, respectively.  On April 6, 2016, the Debtor filed an *Application for Retention of Professional* (the "**Retention Application**"), signed by the Debtor's Principal, seeking to retain KKT as its counsel in the bankruptcy case.[6]  The Debtor previously retained KKT as legal counsel in a New Jersey

---

[4] Docket No. 1.
[5] Docket No. 12-1.
[6] Docket No. 13 at 1.  Debtor specifically checked the box on the Court's standard form indicating it sought to retain KKT to serve as attorney for debtor-in-possession and not special counsel.  *Id.*

Superior Court state court action that involved the Flores Creditors (the "**State Court Action**").[7]

On April 18, 2016, the Court entered an *Order Authorizing Retention of KKT as Debtor's Counsel*

(the "**Retention Order**").[8]  Throughout the Debtor's Chapter 11 case, the Debtor filed thirteen

monthly operating reports ("**MORs**") that covered the period from April 2016 through April

2017.[9]  The MORs were signed under penalty of perjury by the Debtor's Principal.[10]  KKT filed

the MORs electronically on behalf of the Debtor using Mr. Kevin K. Tung, Esq.'s electronic filing

credentials.[11]  None of the MORs reflected the Undisclosed Payments.

The Retention Order provided that KKT's retention was effective on the date that the

Retention Application was filed with the Court.[12]  The Retention Order further provided that

"[c]ompensation shall be paid in such amounts as may be allowed by the Court upon proper

application(s) therefor."[13]  The Retention Application disclosed that, on February 9, 2016, the

Debtor retained KKT as bankruptcy counsel and paid KKT a $3,000 retainer (the "**Retainer**").[14]

The Retention Application also provided that, other than the Retainer, "no agreement of any type

was made between [KKT] or anyone acting on its behalf and [Debtor] or anyone acting on its

behalf in connection with [KKT's] retention."[15]  The Retention Application provided that KKT

would seek compensation "in accordance with the applicable provisions of the Bankruptcy Code,

the Bankruptcy Rules, the United States Trustee Guidelines . . . for reviewing motions for

compensation and reimbursement expenses filed under 11 U.S.C. § 330, the Local Bankruptcy

---

[7] Docket No. 128 at 2.
[8] Docket No. 15.
[9] *See* Docket Nos. 23 (April 2016), 31 (May 2016), 33 (June 2016), 36 (July 2016), 37 (August 2016), 39 (September 2016), 41 (October 2016), 46 (November 2016), 49 (December 2016), 52 (January 2017), 55 (February 2017), 61 (March 2017) and 71 (April 2017).
[10] *Id.*
[11] *Id*.
[12] Docket No. 15.
[13] *Id*.
[14] Docket No. 15; *See* Docket No. 1 at 29 and 39.
[15] Docket No. 15.

Rules, and further orders of this Court."[16]

The Retention Application utilized the local form for the Bankruptcy Court for the District of New Jersey, which contained a standard section for the Debtor to disclose KKT's potential conflicts.[17] The Debtor indicated that KKT: (1) did not hold an interest adverse to the estate; (2) did not represent an adverse interest to the estate; (3) is a disinterested person under 11 U.S.C. § 101(14); and (4) does not represent or hold any interest adverse to the Debtor or the estate with respect to the matter for which it was retained under 11 U.S.C. § 327(e) of the Bankruptcy Code.[18] In his certification in support of the Retention Application, Mr. Tung checked all of the same boxes including the box that indicates KKT does not hold an interest adverse to the Debtor or the estate under § 327(e).[19] The Retention Application also indicated that KKT was selected because the firm "devotes a substantial percentage of its professional time and effort to the practice of bankruptcy law and insolvency law" and KKT "has rich experience in bankruptcy practices including chapter 11 cases."[20]

**The Pre-Petition State Court Action**

On November 16, 2015, the Flores Creditors initiated the State Court Action against the Debtor and Robert Browning ("**Mr. Browning**"), a non-party to the instant matter. KKT represented the Debtor in the State Court Action.[21] Following that trial, the jury found that: (1) Mr. Browning, a principal, officer, employee or agent of the Debtor, committed an assault and

---

[16] *Id.*
[17] *See* Docket No. 13 at 4.
[18] *See id.* (number 4 is inconsistent with the narrative portions of the Retention Application, which make clear that Debtor sought to retain KKT as counsel under Section 327 subsection (a), not subsection (e). *Compare* 11 U.S.C. § 327(a) (retention of professional to assist in conducting the case) *with* 11 U.S.C. § 327(e) (retention of professional for a specified special purpose other than conducting the case)).
[19] *See* Docket No. 13-1 at 2.
[20] Docket No. 13 at 2.
[21] Docket No. 100 at 8.

battery against Armando Flores in the scope of Mr. Browning's employment with the Debtor;[22] and (2) the Debtor negligently hired, supervised, or retained Mr. Browning.[23]   Based on the jury verdict and award, the state court entered judgment against Mr. Browning and the Debtor, jointly and severally, for $1,260,936.13 plus $4,957 in pre-judgment interest in favor of Armando Flores, and $580,000.00 plus $3,244.44 in pre-judgment interest (the "**State Court Judgment**").[24]   The Debtor (and Mr. Browning) appealed the State Court Judgment on December 25, 2015.

**The Chapter 11 Case**

The Debtor filed bankruptcy on March 24, 2016 because of the State Court Judgment.[25] On May 3, 2016, the Debtor filed a *Motion for Relief from Stay* (the "**Stay Relief Motion**"), seeking permission to proceed with its appeal of the State Court Judgment and requesting the bankruptcy case be held in abeyance during the pendency of the appeal.[26]   The Flores Creditors opposed the Stay Relief Motion[27] and filed a *Cross-Motion for Relief from Stay* (the "**Cross-Motion**"), seeking permission to collect on the State Court Judgment.[28]   On May 31, 2016, the Court held oral argument on the Stay Relief Motion and the Cross-Motion.   The Debtor asked the Court to send the parties to mediation and the Court granted the Debtor's request.   Mediation ultimately proved unsuccessful.[29]

On November 29, 2016, the parties appeared again for oral argument regarding the Stay Relief Motion and the Cross-Motion.   At the conclusion of argument, the Court issued an oral opinion.   The Court found that the Debtor was using the bankruptcy case as a substitute for posting

---

[22] Mr. Browning bit off the nose of Armando Flores on the Debtor's premises.
[23] State Court Order, Docket No. 25-1.
[24] *Id.* at 8–9.  The State Court Judgment also included punitive damages against Mr. Browning only.
[25] Docket No. 128 at 2.
[26] Docket No. 18.
[27] Docket No. 24.
[28] Docket No. 25.
[29] Docket No. 28.

a *supersedeas* bond to appeal the State Court Judgment, as required under state law.  The Court observed that under certain circumstances this could be a potential basis for stay relief.  However, in this case stay relief was inappropriate without posting the bond because the Debtor failed to attempt to pay or obtain a waiver of the bond requirement.  Furthermore, the Court denied the Stay Relief Motion because the bankruptcy case (at that time) reflected a two-party dispute.  Next, noting that the Flores Creditors objected to the Debtor's request for stay relief but did not seek dismissal of the bankruptcy case, the Court denied the Cross-Motion without prejudice.

On January 18, 2017, well over a month after the Court denied the Stay Relief Motion, the Debtor filed an untimely *Motion for Reconsideration* (the "**Reconsideration Motion**").[30]  Among other things, the Debtor argued that after the Court issued the Order denying the Stay Relief Motion, the Debtor's Principal applied for a *supersedeas* bond, but was denied because the value of the real property to be posted as collateral for the bond was insufficient.[31]  On April 4, 2017, the Court held a hearing on the Reconsideration Motion.  At the end of that hearing, the Court issued an oral opinion finding that the Debtor's inability to obtain a *supersedeas* bond was not new evidence because the Debtor implicitly, if not explicitly, asserted in support of the Stay Relief Motion that it filed a bankruptcy petition because it could not obtain a *supersedeas* bond.  The Court denied the Reconsideration Motion with prejudice.[32]

On April 10, 2017, the Court *sua sponte* issued an *Order to Show Cause* (the "**First OSC**") as to why the case should not be dismissed or converted because (1) the case is comprised of a two-party dispute and (2) the Debtor failed to file a plan and disclosure statement.[33]  The United

---

[30] Docket No. 47.  The Court recognizes that motions to reconsider are generally viewed as motions to alter or amend judgment under Federal Rule of Civil Procedure 59 incorporated by Federal Rule of Bankruptcy Procedure 9023 since motion to reconsider does not exist under either the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure.
[31] Docket No. 47-1 at 6–7.
[32] Docket No. 57.
[33] Docket No. 56.

States Trustee's Office (the "**UST**"), the Flores Creditors, and the Debtor responded.[34]  On May

16, 2017, the Court heard oral argument on the First OSC.  Mr. Tung, appearing on behalf of the

Debtor, conceded that the Debtor failed to file a plan and disclosure statement and indicated that

it would be futile for the Debtor to do so.[35]  Clearly, had the Court not issued the First OSC, KKT

would have further delayed in informing the Court that the Chapter 11 case was unable to confirm.

The Flores Creditors sought conversion, arguing a Chapter 7 proceeding is the most

expeditious way to resolve the matter.  At the end of that hearing, the Court issued an oral opinion.

The Court noted that, because a second creditor filed a proof of claim, the bankruptcy case was no

longer a two-party dispute between the Debtor and the Flores Creditors.  Therefore, because of the

Flores Creditors' request and the additional creditor, it was in the best interest of the creditors and

the estate to appoint a Chapter 7 trustee (the "**Chapter 7 Trustee**").  On May 17, 2017, the Court

entered an *Order Converting Chapter 11 Case to Chapter 7*.[36]  A Chapter 7 Trustee was appointed

to the case.[37]  As of the date of conversion, KKT had not filed a fee application in the Chapter 11

case.  The Chapter 7 Trustee moved to sell the Debtor's only known asset—the Property.  On

September 20, 2017, the Court issued a *Final Order Authorizing Public Sale of the Real Property*

*of the Debtor*.[38]

**<u>The Fee Application</u>**

On October 10, 2017, KKT filed the Fee Application, which KKT indicated was the first

and final application for professional services rendered and reimbursement of expenses incurred.[39]

---

[34] Docket Nos. 62, 64, and 65.
[35] However in argument, Mr. Tung erroneously alleged that the Court previously found the case was not *per se* a bad faith filing in ruling on the Stay Relief Motion.  At the time, bad faith filing was not an issue.  The Court clarified that while it may have found the Debtor's actions within the bankruptcy case did not appear to be bad faith, it had never ruled on whether the filing of the bankruptcy case itself was bad faith.
[36] Docket No. 66.
[37] Docket No. 69.
[38] Docket No. 97.
[39] Docket No. 100.

The Fee Application further indicated that KKT was retained pursuant to § 327(a).[40] In the Fee

Application, KKT seeks $29,720 in fees and $2,099 in expenses incurred during the period of

February 9, 2016 through October 10, 2017, for a total of $31,819.[41] Notably, the Fee Application

seeks fees for both before and after the May 17, 2017 conversion of the case to Chapter 7.  As

news to the Court and all interested parties, KKT disclosed for the very first time that it received

$19,400 from the Debtor's Principal's "personal bank account as pre-payment for legal services

rendered."[42]  However, the Fee Application failed to provide any other information about the

Undisclosed Payments.

On October 19, 2017, the Flores Creditors filed a letter memorandum in opposition to the

Fee Application, arguing that KKT failed to serve the Flores Creditors with the Fee Application

and KKT is not entitled to compensation from the estate post-conversion because the Chapter 7

Trustee never retained KKT as the Debtor's counsel.[43]  The Flores Creditors further argued that

KKT seeks fees for services that provided no benefit to the estate and were unnecessary to the

estate's administration.  Finally, the Flores Creditors alleged that KKT guided the Debtor in filing

this case in bad faith, including prosecuting the meritless Stay Relief Motion.[44]

The Chapter 7 Trustee filed an *Objection to First and Final Fee Application of Kevin

Kerveng Tung, P.C. as Debtor's Counsel*.[45]  The Chapter 7 Trustee asserted: (1) KKT's acceptance

of the Undisclosed Payments undercut KKT's representation of the Debtor; (2) KKT failed to

disclose the Undisclosed Payments as required under 11 U.S.C. § 329(a) and Federal Rule of

Bankruptcy Procedure 2016(a) and (b); (3) the Fee Application provides insufficient information

---

[40] *Id.* at 9.
[41] *Id.* at 7 and 17.
[42] *Id.* at 16.
[43] Docket No. 101.
[44] *Id.* at 1–2.
[45] Docket No. 102.

about the Undisclosed Payments for the Court to determine whether KKT's services benefitted the estate or the Debtor's Principal under 11 U.S.C. § 328; and (4) the Fee Application contains excessive time entries for relatively routine tasks.[46]

The night before the hearing on the Fee Application, KKT untimely filed a reply to the Flores Creditors' Objection and a reply to Chapter 7 Trustee's Objection.[47]  KKT argued that even if it is not entitled to post-conversion fees, it can still seek pre-conversion fees for the Chapter 11 case.[48]  KKT also argued that the Stay Relief Motion and the Reconsideration Motion would have benefitted the estate, if successful *i.e.*, if the Debtor won.[49]  KKT asserted that the Undisclosed Payments were necessary because the Retainer was insufficient to cover KKT's fees.  KKT also argued that the Debtor's disclosure of the Undisclosed Payments in the Fee Application satisfied the requirements of 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(a) and (b).[50]

This Court held a hearing on the Fee Application (the "**Fee Application Hearing**").[51]  Mr. Tung, on behalf of KKT, argued that the Fee Application was reasonable.[52]  Mr. Tung presented two alternative fee arrangements.  Mr. Tung asserted that even though the Court approved a $300 hourly rate in the Retention Order, he would voluntarily reduce his hourly rate to $200 in consideration of the Debtor's lack of funds.[53]  However, Mr. Tung argued that the Court should revert to the original $300 hourly rate if the Court found any of the time entries excessive pursuant to the Chapter 7 Trustee's or the Flores Creditors' objections.[54]  In other words, the reduction only applied if the Court awarded the exact amount of fees requested in the Fee Application.  Mr. Tung

---

[46] *See id.* at 2–4.
[47] *See* Docket Nos. 103 and 104.
[48] Docket No. 103 at 2.
[49] *See id.* at 2–3.
[50] Docket No. 104 at 1–3.
[51] Docket No. 106.
[52] *Id.* at 3:13–4:2.
[53] *Id.*
[54] *Id.* at 4:5–4:15.

conceded that KKT did not present this conditional reduction in its pleadings.[55]  Mr. Tung also conceded that KKT was not entitled to fees after the case was converted to one under Chapter 7.[56]

The Chapter 7 Trustee argued that KKT's acceptance of the Undisclosed Payments during the Chapter 11 case, without Court authorization or disclosure to the Court, violated the Bankruptcy Code and the Bankruptcy Rules.[57]  The Trustee contended that KKT knew, or should have known, of its obligation under the Bankruptcy Code and the Bankruptcy Rules to disclose compensation from any source to this Court.[58]

The Court then questioned Mr. Tung on KKT's failure to mention any payment to KKT beyond the Retainer on behalf of the Debtor.[59]  Mr. Tung was evasive, unclear, and repeatedly tried to characterize the Undisclosed Payments as something other than a loan and instead, returned to his argument that the Fee Application was reasonable.[60]  Ultimately, Mr. Tung admitted that the Undisclosed Payments were, in fact, a loan from the Debtor's Principal incurred without Court approval.[61]  Mr. Tung also indicated that, although there was no written agreement, the Debtor's Principal issued the Undisclosed Payments in several checks to KKT.  Mr. Tung could not remember how many checks Debtor's Principal issued—just that they were over an unknown time period after KKT filed the Retention Application, which was post-petition.[62]

Mr. Tung further admitted that the Undisclosed Payments were never disclosed to the Court or other parties until KKT filed the Fee Application.[63]  Mr. Tung specifically said the Debtor never

---

[55] *Id.* at 5:2–5:8.
[56] *Id.* at 7:1–4.
[57] *Id.* at 8:13–19.
[58] *Id.* at 9:3–25.
[59] *Id.* at 19:17–20:11.
[60] For example, Mr. Tung asserted that the Undisclosed Payments were "a loan, it could be something, right, whatever that is. . .", then "[w]ell it's not a loan, it's actually the fees that we received. We don't have to return."  *Id.* at 21:13–22:14.
[61] *See id.* at 22:21–23:5.
[62] *Id.* at 24:9–26:3.
[63] *Id.* at 26:13–20.

included the Undisclosed Payments in the MORs because if the Debtor owed post-petition money for legal fees, "the monthly operation report most likely will go negative.  And at the time we were talking about reorganization, Your Honor."[64]  Mr. Tung asserted that "if we d[id] not disclose in the fee application that the debtor has paid us, nobody would know."[65]  Mr. Tung ultimately conceded that because none of the Debtor's or KKT's pleadings disclosed it, the Court had no way of knowing about the Undisclosed Payments until KKT filed the Fee Application.[66]

Considering the panoply of issues raised during the Fee Application Hearing, the Court reserved.

## **The Court's Second Order to Show Cause**

As a result of the Fee Application Hearing, the Court issued the Second OSC to determine: (1) the nature of the Undisclosed Payments, *i.e.* whether the Debtor's Principal paid KKT's fees as a loan to Debtor without Court approval and (2) whether a conflict of interest arose between KKT and the Debtor as a result of an insider paying Debtor's legal fees.[67]  The Second OSC ordered KKT and Mr. Tung (collectively "**Counsel**") to show cause as to why this Court should not: (i) find that Counsel breached its fiduciary obligations to the Debtor; (ii) find that Counsel violated the New Jersey Rules of Professional Conduct ("**RPC**"); (iii) find that Counsel is not and was not disinterested in its representation of the Debtor; (iv) terminate Counsel as attorney to the Debtor; (v) deny Counsel's Fee Application in its entirety; (vi) require Counsel to disgorge attorney's fees previously paid by or on behalf of the Debtor; and (vii) sanction Counsel as deemed necessary and appropriate.[68]  The Second OSC also provided an opportunity for interested parties

---

[64] *Id.* at 26:4–12.
[65] *Id.* at 20:21–23.
[66] *Id.* at 26:13–20.
[67] Docket No. 125.
[68] *Id.*

with standing to file pleadings in response to the Court's queries.

Counsel filed an opposition to the Second OSC.[69]  Counsel argued that (1) there is no conflict of interest as it applies to receiving legal fees from the Debtor's Principal because the Debtor and Debtor's Principal's interests are united, (2) the acceptance of legal fees paid by the Debtor's Principal is not a *per se* violation of the retention parameters provided by 11 U.S.C. § 327(a), and (3) Counsel made appropriate disclosures regarding the Retainer and the Undisclosed Payments from the Debtor's Principal in the Fee Application.[70]

Counsel argues that the Court should adopt the "analytical approach," an alleged approach used by courts to analyze each case's specific facts when determining whether a conflict of interest exists if a third party funds legal counsel for a debtor-in-possession.[71]  Counsel asserts that it would not have requested reimbursement of the Undisclosed Payments if the case remained in a Chapter 11 and did not convert to a Chapter 7 case.  Counsel explains that it "would not request fees from the same source, the Single Member's own funds."[72]  Counsel, without any detail, states that it never intentionally or negligently made false statements of material fact or law to the Court and therefore there is no violation of RPC 3.3.[73]  Counsel further argues that it should not be disqualified for employment under § 327 and should not be ordered to return the funds paid by the Debtor's Principal.[74]  Finally, Counsel contends that it made complete and timely disclosures in accordance with Bankruptcy Rule 2016 by listing the Undisclosed Payments from the Debtor's Principal in the Fee Application.[75]  Counsel asserts there is a high standard of proof in disqualifying

---

[69] Docket No. 128.
[70] *Id.*
[71] *Id.* at 2.
[72] *Id.* at 6–7.
[73] *Id.* at 7.
[74] *Id.* at 11–12.
[75] *Id.* at 16.

legal counsel even when there is a violation of professional ethics.[76]  In the instant case, Counsel argues there is insufficient evidence to support disqualification from the representation of the Debtor.[77]

The UST filed a Memorandum of Law in Support of the  Second OSC.[78]  The UST argues that Counsel violated the Bankruptcy Code and this Court's Order by failing to provide requisite disclosures for each periodic payment made by the Debtor's Principal to KKT and failing to file applications for compensation in accordance with the Retention Order.[79]  The UST also argues that a failure to comply with § 329 and Bankruptcy Rule 2016(b) is grounds to deny all fees and costs sought by counsel, even if the failure resulted from negligence or inadvertence.[80]  The UST asserts that Counsel's disclosure is inadequate because Bankruptcy Rule 2016(b) requires that the attorney file a supplemental statement within fourteen days after receiving any payment.[81]  The UST requests that the Court disgorge all fees from Counsel for failure to comply with 11 U.S.C. §§ 327(a) and 329, Bankruptcy Rule 2016(b), and for failure to meet the requirements for compensation under 11 U.S.C. § 330.

The Chapter 7 Trustee filed a response to Counsel's opposition to the Court's Second OSC and also joined the UST in its Memorandum of Law in Support of the Court's Second OSC.[82]  The Chapter 7 Trustee argues that the primary issue in this matter is Counsel's failure to disclose as required by § 329 and Bankruptcy Rule 2016(b), regardless of whether that failure was inadvertent

---

[76] *Id.* at 17.
[77] *Id.*
[78] *Memorandum of Law of the Acting United States Trustee in Support of this Court's Order to Show Cause for Sanctions Against Kevin Kerveng Tung, P.C. and Kevin K. Tung, Esq., in his Individual Capacity, for Potential Violations of the New Jersey Rules of Professional Conduct, the United States Code, and the Federal Rules of Bankruptcy Procedure* (the "**Memorandum in Support of the Court's Second OSC**"), Docket No. 129.
[79] *See* Docket No. 15.
[80] Docket No. 129 at 8–9.
[81] *Id.*
[82] Docket No. 134.

or negligent.[83]   The Chapter 7 Trustee contends that it does not matter if the Debtor's Principal's

interest and the Debtor's interest are united.   The Chapter 7 Trustee argues that proper and timely

disclosures are required to enable the Court to determine if a possible conflict of interest exists.[84]

Ultimately, the Chapter 7 Trustee requests the Court: (1) deny Counsel's Fee Application; (2)

require Counsel to disgorge all fees received by Counsel in connection with this case; and (3) issue

additional sanctions against Counsel in an amount determined by the Court.[85]

Counsel filed a reply to the UST's Memorandum in Support of the Court's Second OSC

and a sur-reply to the Chapter 7 Trustee's response.[86]   Counsel asserts again that there was honest

and complete disclosure of the Undisclosed Payments in the Fee Application.[87]   Furthermore,

Counsel argues that the UST misstates the Fee Application Hearing transcript and that Mr. Tung

never described the payments as a loan.[88]   Counsel asserts that it "never willfully or intentionally

withheld any facts or information from the Court."[89]   Counsel seemingly asserts it made a technical

breach.[90]   Therefore, the Court should not impose the harsh sanction of disgorgement.[91]

Specifically, Counsel asserts that it never intended to deceive the Court regarding the fees received

in connection with this case.[92]   Counsel states that it was unaware of any Bankruptcy Code

requirements to disclose or the requirement in Bankruptcy Rule 2016 to file a supplemental

statement within fourteen days of receiving legal fees.   Counsel argues that this is not sufficient

evidence to show willfulness.[93]   Finally, Counsel argues that in order for the Court to deny

---

[83] *Id.* at 1–2.
[84] *Id.* at 3.
[85] *Id.* at 2.
[86] Docket Nos. 131 and 138.
[87] Docket No. 131 at 2.
[88] *Id.* at 2–3.
[89] *Id.* at 5.
[90] *Id.* at 6.
[91] *Id.*; Docket No. 138 at 3.
[92] Docket No. 138 at 2–3.
[93] Docket No. 131 at 5.

compensation under § 329 it must first determine that the fees requested are excessive.[94]

Counsel's reply provides a breakdown of the $19,400, to be paid to Debtor's Principal, as requested in the Fee Application.[95]  The breakdown reflects that $3,000 was requested for the Retainer paid by Debtor pre-petition, and the remaining $16,400 consisted of twelve separate post-petition payments paid by Debtor's Principal to Counsel.[96]  Counsel also filed copies of thirteen checks in support of its breakdown of the Undisclosed Payments.[97]  Twelve of the checks evidence payments made from Debtor's Principal to KKT post-petition.[98]  The thirteenth check is the Retainer check.  The Retainer was not paid from the same account and was paid by the Debtor.[99]

### The Second OSC Hearing

The Court held a hearing on the Second OSC (the "**Second OSC Hearing**").  The UST, the Chapter 7 Trustee, Mr. Tung, and Mr. Robert Browning (seated in the gallery) were present at the Second OSC Hearing.[100]  The Debtor's Principal was not.  At the Second OSC Hearing, Mr. Tung reiterated that Counsel's failure to disclose the Undisclosed Payments within fourteen days was simply a technical error.[101]  He further argued that Counsel did not believe that it needed to disclose anything about the Undisclosed Payments until it filed the Fee Application.[102]  After questioning by the Court, however, Mr. Tung admitted that he understands the need for timely disclosure to provide the opportunity for other parties and the Court to review potential conflicts

---

[94] *Id.* at 7.
[95] *Id.* at 1–2.
[96] *Id.*
[97] Docket No. 131-1.
[98] *Id*. at 3–14.
[99] *Id.* at 2.
[100] Mr. Robert Browning the co-defendant from the State Court Action, was present in court at the Second OSC Hearing but Debtor's Principal was not.  The Court observed Mr. Browning providing information to Mr. Tung during the Second OSC Hearing leading the Court to wonder to whom does Mr. Tung actually report—Debtor's Principal or Mr. Browning (the person responsible for causing the Debtor to file Bankruptcy in the first place).
[101] Docket No. 142 at 7:1–18.
[102] *Id.* at 7:19–22.

of interests.[103]  Mr. Tung argued that this Court should overlook Counsel's violation of Bankruptcy

Rule 2016 and the Retention Order because it was a harmless error since KKT voluntarily

disclosed the payments on the Fee Application.[104]  Regardless, Mr. Tung admitted to a violation

of Bankruptcy Rule 2016(b).  He further conceded that Counsel is not entitled to $1,500 of the fees

for post-conversion services included in the Fee Application.[105]

Importantly, this Court could not determine from any pleadings how to treat the $19,400

Undisclosed Payments (other than the $3,000 Retainer) because every time the Court requested

clarification, Counsel refused to commit to any characterization of the payments.  Mr. Tung

expressed that the parties never considered how to characterize the payments prior to this case's

conversion.[106]  Mr. Tung previously explained to this Court that the payments *could* be a loan.

However at the Second OSC Hearing, Mr. Tung backtracked and stated that the Undisclosed

Payments were not a loan and instead, could be a cash infusion.[107]  To explain the change in his

characterization, Mr. Tung stated that "[l]awyers, you know, when they're doing cases, makes [sic]

a mistake."[108]  The Court asked why the MORs do not reflect the Undisclosed Payments.[109]  Mr.

Tung explained that because the Debtor had no income, any additional burden on the Debtor would

eliminate the chance of the Debtor being successful in its reorganization.[110]  He further explained

that if he knew how to characterize that money at the time Counsel received it, he would have

disclosed it on the MORs.[111]  This statement is contrary to Mr. Tung's other statement that he

purposefully chose to omit the Undisclosed Payments from the MORs because ". . . then the

---

[103] *Id.* at 8:8–9:19.
[104] *Id.* at 18:21–19:13.
[105] *Id.* at 46:12–24.
[106] *Id.* at 11:5–17.
[107] *Id.* at 12:21–13:15.
[108] *Id.* at 17:10–11.
[109] *Id.* at 19:18–20:4.
[110] *Id.* at 22:2–9.
[111] *Id.* at 23:14–15.

monthly operation [sic] report most likely will go negative."  The Chapter 7 Trustee argued that

both a loan and a cash infusion received by a Chapter 11 debtor need to be disclosed on a monthly

operating report.  The Chapter 7 Trustee also argued that in addition to disclosure, the Debtor

would need the Court's approval to accept a loan or cash infusion.[112]

After realizing the negative implications of characterizing the payments as an investment,

Mr. Tung again changed his tune and stated that "[i]t could be a gift."[113]  Yet, after the Court asked

if a gift would also need to be reported on the MORs, Mr. Tung replied "I'm not saying it's a

gift."[114]  Mr. Tung could not see how any of the characterizations regarding the Undisclosed

Payments created a conflict of interest—whether that conflict be with the Debtor or the Debtor's

Principal.[115]  Mr. Tung asserted that "if there was never a conversion to Chapter 7, that would

never be an issue because we never have to apply for legal fees."[116]  Apparently, Mr. Tung forgot

the requirements placed upon Counsel by the Retention Order, the Bankruptcy Code, and

Bankruptcy Rules.  Mr. Tung further explained that the Debtor would never have to apply for legal

fees in a Chapter 11 because it's a single member and the Debtor's Principal never intended to

burden the Debtor.[117]  Mr. Tung continued to give the Court amorphous and conflicting answers

while still dodging the Court's questions.  When the Court asked Mr. Tung if the Debtor's Principal

asked for the money back, Mr. Tung said "[s]he didn't specifically ask for the money back" yet

"she did ask if we can put in the application . . . ."[118]

At the Second OSC Hearing, the UST asserted that Mr. Tung's argument demonstrated his

---

[112] *Id.* at 60:18–61:7.
[113] *Id.* at 23:24.
[114] *Id.* at 62:10.
[115] *Id.* at 20:12–21:21.
[116] *Id.* at 25:13–15.  It seems Mr. Tung would have continued to have the Debtor's Principal continue to pay KKT similar to the Undisclosed Payments.
[117] *Id.* at 26:18–27:7.
[118] *Id.* at 49:1–3.

"lack of understanding of compensation in the bankruptcy system."[119]  The UST argued that,

pursuant to § 329, the fees should be disgorged and paid back to the Debtor's Principal.[120]

Interestingly, the UST addressed that the Debtor's Principal filed a proof of claim in this case.[121]

The UST asserted that if the Debtor's Principal's payments were made on behalf of the Debtor

post-petition, it would have created a conflict of interest because Debtor's Principal purports to be

a creditor in this case.[122]  However, the dates for the basis of the alleged payments in the proof of

claim are unclear based on the information provided in the Debtor's Principal's proof of claim.[123]

The UST clarified, however, that the Court need not find a conflict of interest to disgorge Counsel's

fees and deny the Fee Application because plenty of other reasons exist.[124]

As previously stated, Mr. Tung eventually asserted that the $19,400 includes the $3,000

Retainer paid by the Debtor, which was already disclosed to the Court in the Retention

Application.[125]  Mr. Tung contended that because the $3,000 was included, the Undisclosed

Payments only consist of $16,400, which is the actual amount that the Debtor's Principal paid to

Counsel post-petition.[126]  When the Court asked Mr. Tung why he included the Retainer in the Fee

Application, he responded that "[m]aybe, maybe we thought the money was from single member,

it's also in her pocket, so she wants to get everything back for legal fees."[127]  This was yet again

another nebulous answer to the Court that simply made no sense.

Instead of showing contrition at the Second OSC Hearing, as the Court already specifically

stated on the record, Mr. Tung was "very defensive, flip flopping in [his] statements, throwing the

---

[119] *Id.* at 27:19–21.
[120] *Id.* at 33:5–10.
[121] *Id.* at 36:21–38:14; *See* Claim No. 5-1.
[122] *Id.* at 38:10–14.
[123] *See* Claim No. 5-1.
[124] Docket No. 142 at 40:19–24.
[125] *Id.* at 45:4–7.  This was previously addressed in Counsel's sur-reply to the Chapter 7 Trustee at Docket No. 131.
[126] *Id.* at 45:4–7 and 54:6–10.
[127] *Id.* at 53:14–16.

issues to the Court to figure out, and . . . remaining unhelpful as the Court [broached] the decision

of what to do about [KKT's] representation and the fee application and the fees that [KKT]

received."[128]  The Court reserved at the Second OSC Hearing.  The Court entered an Order on

March 31, 2020 denying the Fee Application, disgorging all fees and costs received in connection

with the Debtor's bankruptcy case, and indicated that a decision would follow and that the Court

would refer the matter to the Chief Judge of the District Court of New Jersey (the "**March 31,**

**2020 Order**").[129]  On April 2, 2020, KKT filed a *Notice of Appeal* appealing the March 31, 2020

Order.[130]  Since the March 31, 2020 Order indicated that a decision would follow, this decision is

not subject to the divestiture rule as it has the Court's findings of fact and conclusions of law in

support of that Order.

## DISCUSSION

The Fee Application requests a total amount of $31,819 ($29,720 in fees and $2,099 in

expenses).[131]  Of the $29,720 in professional fees, Counsel requested that $19,400 be paid to

Debtor's Principal "individually for pre-payment for KKT Firm."[132]  Mr. Tung asserted at the

Second OSC Hearing that the $19,400 received includes the $3,000 Retainer.[133]  Counsel concedes

that the request for $19,400 was an error,[134] and the amount actually paid to Counsel by Debtor's

Principal was $16,400.[135]

The Court takes issue with Mr. Tung's uncertainty as to why he requested certain fees and

the source of those fees.  In fact, the Court takes issue with just about every statement Mr. Tung

---

[128] Docket No. 142 at 65:9–14.
[129] Docket No. 149.
[130] Docket No. 150.
[131] Docket No. 100.
[132] Docket No. 100 at 17.
[133] Docket No. 142 at 45:1–7.
[134] This was just one of the many errors Counsel made.
[135] Docket No. 138 at 2.

made while failing to respond to direct inquiries made by the Court. It is clear to this Court that Mr. Tung was willing to say anything that he thought might resolve the issue regarding the Undisclosed Payments in Counsel's favor. Mr. Tung's willingness to say absolutely anything resulted in him saying nothing that proved helpful to the Court. He simply demonstrated to the Court that his blatant disregard of the Retention Order, the Bankruptcy Code, Bankruptcy Rules, and RPC cannot be rewarded.

Counsel's inability to commit to a characterization of the Undisclosed Payments also troubles the Court. Mr. Tung took three different positions starting at the Fee Application Hearing and ending at the Second OSC Hearing—a loan, cash infusion, or gift. If the Undisclosed Payments were a loan, they needed to be approved by the Court under § 364. If they were a cash infusion or a gift, they needed Court approval under § 363. Any characterization, however, requires Counsel's disclosure of the compensation *and* disclosure in the MORs. No matter what characterization, they all require disclosure under Bankruptcy Rule 2016.

## I.    Counsel was Retained under § 327

Section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and the RPCs govern the employment of counsel in bankruptcy cases. Attorneys in bankruptcy proceedings must comply with the requirements under 11 U.S.C. § 327 of the Bankruptcy Code, which provides the general parameters for the employment of professional persons by the trustee.[136] Section 327 also applies to a debtor in possession.[137] Proper retention of professional persons under § 327 requires court approval.[138] Section 330 governs compensation of professionals retained under § 327.[139] That section provides:

---

[136] 11 U.S.C. § 327.
[137] *In re Congoleum Corp.*, 426 F.3d 675, 689 n.13 (3d Cir. 2005).
[138] *See* 11 U.S.C. § 327.
[139] 11 U.S.C. § 330.

After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.[140]

The Third Circuit interprets § 330 to provide the courts with discretionary authority in that courts *may award* reasonable compensation.[141]   The party seeking compensation bears the burden to prove that the compensation and expenses sought are reasonable and necessary.[142]

In this case, Counsel sought retention as Debtor's counsel under § 327 of the Bankruptcy Code.[143]   Mr. Tung's certification in support of the Retention Application asserted that Counsel: (1) was a disinterested person as defined under the Bankruptcy Code; (2) did not hold any interest adverse to the estate; and (3) did not represent an adverse interest to the estate.   This Court accordingly authorized Debtor to retain Counsel under § 327 based upon the representation made to the Court.[144]   The Court's inquiry addresses the post-petition compensation Counsel received throughout the Debtor's bankruptcy, which was only disclosed at the end of Counsel's representation in the case when Counsel filed the final Fee Application.   Therefore, this Court will first review whether Counsel made timely and adequate disclosures as required by the Bankruptcy Code and the Bankruptcy Rules and then whether Counsel acted with full candor to the Court.

---

[140] 11 U.S.C. § 330(a)(1).

[141] *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994).

[142] *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 260 (3d Cir. 1995); *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997) (citing *In re Ark. Co.*, 798 F.2d 645, 650 (3d Cir. 1986) (other citation omitted));

[143] Docket No. 13.

[144] Docket No. 15.

## II.    Counsel Violated Bankruptcy Rules 2014 and 2016 and the Retention Order

Bankruptcy Rule 2014 sets forth a procedure for debtor's attorney retained under § 327 to make certain disclosures.[145]    Specifically, Bankruptcy Rule 2014 requires that the debtor's application to employ counsel shall state, "to the best of the applicant's knowledge," the attorney's "connections with the debtor, creditors, [and] any other party in interest."[146]

"Disclosure 'goes to the heart of the integrity of the bankruptcy system.'    Therefore, the duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct."[147]    The Bankruptcy Code demands the disclosure of an attorney's transactions with a debtor.    Section 329 of the Bankruptcy Code requires a debtor's attorney:

> to file with the court a statement of the compensation paid or agreed
> to be paid, if such payment or agreement was made after one year
> before the date of the filing of the petition, for services rendered or
> to be rendered in contemplation of or in connection with the case by
> such attorney, and the source of such compensation.[148]

This means a debtor's attorney must disclose all compensation related to the insolvency incurred one year prior to the filing.[149]    Bankruptcy Rule 2016(b) implements § 329 by requiring a debtor's attorney to file a statement within 14 days of the entry of the order for relief disclosing the pre-petition payments.[150]    A debtor's attorney is further obligated to file a supplemental statement "within 14 days after any payment or agreement not previously disclosed."[151]    The Court is authorized to review all payments made to a debtor's attorney after the entry of the order for relief "for services in any way related to the case."[152]    Thus, debtor's attorneys are bound to disclose

---

[145] Fed. R. Bankr. P. 2014.
[146] *In re Radnor Holdings Corp.*, 629 F. Appx. 277, 279 (3d Cir. 2015); Fed. R. Bank. P. 2014(a).
[147] *In re eToys*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (quoting *B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 236 (Bankr. E.D. Cal. 1988).
[148] 11 U.S.C. § 329.
[149] *See Id.*
[150] Fed. R. Bankr. P. 2016(b).
[151] *Id.*
[152] Fed. R. Bankr. P. 2017(b); *See* 11 U.S.C. § 330.

compensation both one year before the case files and all compensation after case filing.

Counsel's opposition to the Second OSC initially asserts that full disclosure was made in the Retention Application and in the Fee Application.[153]   During the Second OSC Hearing, however, Counsel's position changed and Mr. Tung admitted that Counsel failed to disclose compensation received within fourteen days of its receipt as required by Rule 2016.[154]  Even after acknowledging the repeated failures to comply with the disclosure requirements of Bankruptcy Rule 2016(b), Counsel insisted that full disclosure was ultimately made in the Fee Application thereby correcting any prior failures, stating it was only a technical error.[155]  Regardless, it is clear to the Court from Counsel's admissions that at least twelve violations of Bankruptcy Rule 2016 occurred.  One violation for every payment paid by Debtor's Principal as compensation for legal services to Counsel.  The facts show a Rule 2016 violation, but the Court need not further analyze those facts due to the admissions made by Mr. Tung.

Both the UST and the Chapter 7 Trustee argue that Counsel's failure to disclose is sufficient grounds for the Court to deny the Fee Application and disgorge Counsel's fees received in this case.  The UST requests that this Court deny the Fee Application for its failure to disclose compensation, disgorge the Retainer and all fees received in connection with the Debtor's case, and require Counsel to provide an accounting to the Court of all fees received in connection with the instant case.[156]  The Chapter 7 Trustee argues that a failure to make the mandatory disclosures—disclosures that have the potential to reveal a conflict of interest—warrants a denial of all compensation, disgorgement of the Retainer, and imposition of sanctions.[157]

---

[153] Docket No. 128 at 5.
[154] Docket No. 142 at 7:1–18.
[155] Docket No. 142 at 7:8–8:7.
[156] Docket No. 129 at 12.
[157] Docket No. 134 at paragraphs 10-13.

Counsel focused its arguments on attempting to demonstrate that there was no conflict of interest between Counsel and the Debtor. To support the argument of why Counsel does not have a conflict of interests with the Debtor, Counsel relied on *In re Lotus Props. LP* and that court's analysis of the parties' united interests.[158] Counsel also requests that this Court adopt the analytical approach in in determining whether a conflict of interest exists in this case. The *Lotus* court described how courts developed two separate approaches for addressing issues arising from counsel fees paid by insiders of the debtor-in-possession—the restrictive approach and the analytical approach.[159] The restrictive approach institutes a *per se* presumption of a conflict of interest when an insider pays counsel fees on behalf of a debtor.[160] When courts utilize the restrictive approach they also consider whether debtor and the third party insider have united interests.[161] Courts using the restrictive approach found that conflicts of interest exist when there were inadequate disclosures.[162] Alternatively, some courts like *In re Lotus Props. LP* and *In re Missouri Mining* adopted the analytical approach, which rejects the per se rule and instead performs a factual analysis to form a determination as to whether a conflict exists.[163] Counsel asks this Court to follow the analytical approach in this case to determine that no conflict of interest exists.

The UST asserts that this case differs from *Lotus* and *Missouri* primarily because of Counsel's lack of disclosure. The Court agrees. In *In re Lotus Properties LP*, the debtor's principal paid the debtor's retainer to debtor's attorney and paid all ongoing fees.[164] Ironically,

---

[158] *See In re Lotus Props. LP*, 200 B.R. 388 (Bankr. C.D. Cal. 1996).
[159] *Id.* at 391.
[160] *Id.*; *In re Hathaway Ranch Partnership,* 116 B.R. 208, 219 (Bankr. C.D. Cal. 1990).
[161] *Lotus*, 200 B.R. at 391–92.
[162] *Id.* at 392 (citing *Hathaway*, 116 B.R. at 219 and *In re Marine Power & Equipment Co., Inc.,* 67 B.R. 643 (Bankr. W.D. Wash. 1986)).
[163] *See Lotus*, 200 B.R. at 391–92; *See also In re Missouri Mining, Inc.*, 186 B.R. 946 (Bankr. W.D. Mo. 1995).
[164] *Lotus*, 200 B.R. at 390–91.

the *Lotus* court reviewed the potential conflict of interest in the context of a contested fee application where the debtor provided full disclosure to the court at the onset of the case.[165]  The UST argues that just like in *Lotus*, full disclosure should have happened here.[166]  In that case, the facts pertinent to the court's determination of whether a conflict of interest existed were fully disclosed to the court in the retention application.[167]  It is clear that the case at hand is distinguishable from *Lotus*.

Counsel also relies on *In re Missouri Mining* to persuade this Court to perform a factual analysis of this case to find no conflict of interest exists.[168]  *Missouri Mining*, however, instructs this Court that before conducting a factual case-by-case analysis, there must be full disclosure.[169]  Counsel admits that it failed to disclose post-petition compensation received until October 2017, when it revealed the previously concealed Undisclosed Payments in the Fee Application.  Counsel's affirmative decision not to disclose compensation foreclosed this Court, and the other parties in this case, from scrutinizing whether a conflict of interest existed.  So, even if the *Missouri Mining* Court is right that payment to counsel by a third party does not disqualify counsel *per se*, that conclusion cannot be reached without timely, adequate, accurate, and full disclosure.[170]  Here, Counsel waited until the final Fee Application to disclose multiple payments it received from Debtor's Principal.  During the course of Debtor's bankruptcy case, the Debtor's Principal paid Counsel on at least twelve separate occasions.[171]  At no point during the case was the Court or any party aware that Debtor's Principal was paying the Debtor's attorney fees.

Counsel admits that it failed to meet the requirement set out by Bankruptcy Rule 2016(b).

---

[165] *Id.*
[166] *See* Docket No. 129 at paragraph 51.
[167] *Lotus*, 200 B.R. 391.
[168] *In re Missouri Mining, Inc.*, 186 B.R. 946 (Bankr. W.D. Mo. 1995).
[169] *Id.* at 949.
[170] *Id.*
[171] *See* Docket No. 131-1, Exhibit K.

The UST and the Chapter 7 Trustee both argue that—regardless of the source of payments made to Counsel—Counsel failed to make proper disclosures of compensation to the Court and failed to comply with the Bankruptcy Code and Bankruptcy Rules. This Court agrees and finds that Counsel's disclosure in the Debtor's case was untimely, inadequate, and inaccurate.

Additionally, the Retention Order explicitly sets forth that "compensation shall be paid in such amounts as may be allowed by the Court upon proper application(s) therefor."[172] All of the Undisclosed Payments—consisting of twelve separate payments—comprised of compensation paid to Counsel for legal services. None of the Undisclosed Payments, however, were allowed by an order of this Court or included in an application for compensation until the Fee Application. Counsel violated the Retention Order by failing to seek approval and authorization for the compensation it received. The Bankruptcy Code also requires an application to the court for interim compensation.[173] Section 331 of the Bankruptcy Code permits a debtor's attorney to apply to the court for compensation for services rendered before a final fee application.[174] Generally, that compensation is every 120 days unless the court orders otherwise. Counsel violated § 331 when it received the twelve payments neither applied for nor allowed by this Court.

Counsel's excuse of ignorance of the Bankruptcy Code and Bankruptcy Rules is unacceptable and contrary to the "rich experience" in bankruptcy law that Counsel touted in the Retention Application. The Court wonders how Counsel can even profess ignorance of the requirements of the Retention Order when Counsel initially submitted it to the Court at the time it filed the Retention Application. The Court will next determine whether Counsel's actions and lack of disclosures amount to a violation of the RPCs.

---

[172] Docket No. 15 at 3.
[173] *See* 11 U.S.C. § 331.
[174] *Id.*

### III.    Counsel Violated Rule of Professional Conduct 3.3

The Second OSC also questioned whether Counsel violated RPC 3.3.  Courts in the Third Circuit incorporate applicable state law on professional conduct "to avoid 'detriment to the public's confidence in the integrity of the bar that might result from courts in the same state enforcing different ethical norms.'"[175]  "State precedent as to professional responsibility should be consulted when they are compatible with federal law and policy."[176]  Accordingly, pursuant to District of New Jersey Local Bankruptcy Rule 9010-1, attorneys appearing before this Court are bound by the RPCs.[177]  RPC 3.3, which governs candor toward the tribunal, provides, among other things, that "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal[.]"[178]

Counsel asserts that it "never intentionally or negligently made a false statement of material fact or law to the Court."[179]  This Court disagrees.  Counsel electronically filed thirteen MORs on behalf of the Debtor between April 2016 and April 2017.  Based on the exhibits filed with the Court, the earliest check written to Counsel by Debtor's Principal was from May 2016.[180]  Therefore, each of the eleven MORs filed by Counsel covering the period of May 2016 and April 2017 were false statements.  Mr. Tung nonchalantly acknowledged that he omitted the Undisclosed Payments from the MORs just so he could keep the Debtor in a viable Chapter 11.  In other words, Mr. Tung purposefully and strategically decided to omit pertinent information from the MORs—

---

[175] *Congoleum*, 426 F.3d at 687 (quoting *U.S. v. Miller*, 624 F.2d 1198, 1200 (3d Cir. 2000)); *In re Roper and Twardowsky, LLC*, 566 B.R. 734, 746–47 (Bankr. D.N.J. 2017).

[176] *Congoleum*, 426 F.3d at 687 (citing *Grievance Comm. For S. Dist. of N.Y. v. Simels*, 48 F.3d 640, 645 (2d Cir. 1995)).

[177] *See* D.N.J. LBR 9010-1(a); *Roper*, 566 B.R. at 746 (Bankr. D.N.J. 2017).

[178] RPC 3.3(a)(1).

[179] Docket No. 128 at 8.

[180] *See* Docket No. 131-1.

which Mr. Tung filed with the Court.  Again, regardless of the characterization of the Undisclosed

Payments, each characterization required reporting on the MORs.  Counsel again intentionally

chose not to do so.

Counsel's Fee Application requests $19,400 to be reimbursed to Debtor's Principal for

payments made "from her personal bank account as pre-payment for the legal services

rendered."[181]  However, both Counsel's opposition to the Second OSC and his statements made

on the record at the Second OSC Hearing admit that the 19,400 contains the $3,000 Retainer paid

by the Debtor.  Counsel made a false statement regarding the source of the Retainer on the Fee

Application since it was not from the Debtor's Principal.  Under other circumstances, this could

have potentially been viewed as a minor mistake but here the Court must consider all of Counsel's

concealments and obfuscation.

Mr. Tung's statements made on the record at the Fee Application Hearing and the Second

OSC Hearing contradicted one another.  The Court asked Mr. Tung multiple times to characterize

the nature of the Undisclosed Payments.  Mr. Tung repeatedly changed his response.  Mr. Tung

asserted that the Undisclosed Payments were a loan and in the next breath he stated that the

payments were a cash infusion.  When the Court asked Mr. Tung to reconcile why the Undisclosed

Payments were not reflected on the MORs, Mr. Tung then exclaimed that the payments "could be

a gift."  Two of the three characterizations must be false, leaving one of the characterizations to be

true and accurate.  The Court does not know which characterization is true and accurate. The Court

does know, however, that at least two of Counsel's characterizations were false statements.

Therefore, this Court finds Counsel in violation of RPC 3.3—Candor Toward the Tribunal.

There could be other RPCs at play in this case, but RPC 3.3 is one Counsel clearly violated.  Having

---

[181] Docket No. 100 at 16.

reached that conclusion, the Court must next determine whether Counsel is entitled to any compensation despite the inadequate disclosures and violations of the Bankruptcy Rules, the Retention Order, and the RPCs.  The Court finds in the negative.

## IV.    Counsel Failed to Comply with the Court's Order, the Bankruptcy Code, Bankruptcy Rules, and the Professional Rules of Conduct

The UST and the Chapter 7 Trustee argue that this Court should deny the Fee Application in its entirety as a result of Counsel's failure to disclose and violations of the Bankruptcy Code and Rules.  Counsel, on the other hand, repeatedly argues that its failure to comply with Bankruptcy Rule 2016(b) is merely a technical error.  This Court has no idea what Counsel means.  Counsel's repeated lack of candor, intentional concealment, and disregard of the rule of law certainly cannot be likened to a mere "technicality."  Failure to disclose as required by the Bankruptcy Code, Bankruptcy Rules, and RPCs is not a mere technical error.  Counsel failed to comply with the law.

Mr. Tung asserts that he did not know of any specific disclosure requirements until the Second OSC, which is contrary to the bankruptcy expertise he touts in the Retention Application.[182]  Counsel argues that it "*voluntarily*" disclosed the compensation in the Fee Application and, therefore, there was no injury to creditors or the estate.[183]  Mr. Tung ignores the fact that § 329 disclosure requirements are not discretionary—they are mandatory.[184]  "Failure to comply with § 329 and Bankruptcy Rule 2016(b) is grounds to deny all fees and costs sought by counsel."[185]  Even if a failure to disclose is negligent or inadvertent, a court may still deny all compensation of the attorney.[186]  Here, the failure to disclose was neither negligent nor

---

[182] Docket No. 138 at 2.
[183] *Id.*
[184] *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848 (10th Cir. BAP 1997).
[185] *Chatkhan*, 496 B.R. at 695.
[186] *Smitty's Truck Stop*, 210 B.R. at 848.

inadvertent—it was intentional.

This Court finds Counsel's characterization of its failure to disclose as a "technical error" to be disingenuous.   Mr. Tung acknowledges that he knew that he would need to disclose compensation for the Debtor's legal services if it was from "major creditors" or "multiple shareholders."[187]   At the same time, however, Mr. Tung asserted that he didn't think it was necessary in this case because *he* determined that the Debtor's Principal and Debtor had a united interest.[188]   Neither descriptor calls for different treatment.   Disclosure of compensation is required no matter who makes the payment.   Counsel lacked contrition at the Court's Second OSC Hearing. This Court observed that Mr. Tung failed to show the Court that he intends to do better moving forward.[189]   Nor did Mr. Tung demonstrate an understanding of bankruptcy laws.[190]   In fact, Mr. Tung conveyed the opposite on both fronts.   Thus, this Court holds that Counsel's repeated failure to disclose the Undisclosed Payments (the portion comprised of the twelve checks) throughout this case and Counsel's lack of candor to the Court warrant complete denial of the Fee Application and disgorgement of fees related to this case.

## V.   The Court Does Not Need to Decide Whether a Conflict of Interest Arose between Counsel and Debtor

Counsel's complete failure to disclose the Undisclosed Payments paid by Debtor's Principal provides sufficient grounds to deny Counsel's Fee Application and disgorge all compensation Counsel received in connection with this case to the Chapter 7 Trustee.[191]

---

[187] Docket No. 142 at 9:8–15.

[188] *Id.*

[189] Docket No. 142 at 65:15–20.

[190] *See id.* at 65:21–66:4; *Id.* at 27:19–21.

[191] While the Court does not decide the characterization of the Undisclosed Payments, in all circumstances the fees received by Counsel appear to belong to the estate and therefore are disgorged to the Chapter 7 Trustee.  However, if there is any party associated with the Debtor that appears to be harmed, it is the Debtor's Principal.  She lost a valuable asset through the wrongdoing of another.  She paid money to a law firm, which she did not need to pay nor should she have paid.  She may even still be owed money from the estate (of which this Court is not deciding) based upon her proof of claim filed in this case.  If the Chapter 7 Trustee, after further investigation, has reason to believe that the

Therefore, it is unnecessary for the Court to decide whether an actual conflict of interest exists in this case or to decide any other open issues.

## **CONCLUSION**

This Court strongly recommends that Mr. Tung study and learn the Bankruptcy Code and Rules before continuing practice in the insolvency arena.  A review of the RPCs is warranted as well.  Ignorance of the law by an "experienced" attorney is unacceptable.  In bankruptcy a debtor's attorney is a fiduciary of the estate and owes a fiduciary duty.  Further, Mr. Tung is reminded that he personally owes a duty of candor to the Court and should not act in a manner designed to conceal and confuse.  The Court takes no pleasure in this decision, but took even less pleasure in Mr. Tung's representations and behavior during this case.  The conduct in this case was so egregious that the Court shall refer this matter to the Chief Judge of the District Court of New Jersey for review pursuant to D.N.J. L.Civ.R. 104-1(e)(2).  Counsel's Fee Application is denied with prejudice.  All fees that Counsel received in connection with the case are disgorged to the Chapter 7 Trustee.  Based on the foregoing, an *Order Denying the Fee Application and Disgorging Attorney's Fees* was entered on March 31, 2020.

Dated:  April 6, 2020

Honorable Stacey L. Meisel
United States Bankruptcy Judge

---

Debtor's Principal made an unauthorized loan to the Debtor instead of a gift or cash infusion, then (without giving an advisory opinion) this Court would entertain a motion to permit the portion of the Undisclosed Payments that was not part of the Retainer to be transferred back to the Debtor's Principal either as a repayment, administrative expense, or some other mechanism suggested by the Chapter 7 Trustee.  Any such motion should be supported by a certification by the Debtor's Principal with facts that support the relief sought.