UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | . | Case No. 16-15598(SLM) |
| | . | |
| 38-36 GREENVILLE AVE LLC, | . | M.L.K. Federal Building |
| | . | 50 Walnut Street, 3rd Floor |
| | . | Newark, NJ 07102 |
| Debtor. | . | |
| | . | September 12, 2023 |
| . . . . . . . . . . . . | . | 10:59 a.m. |

TRANSCRIPT OF HEARING ON MOTION TO VACATE
THE ORDER APPROVING SETTLEMENT
BEFORE HONORABLE STACEY L. MEISEL
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Lingyan Quan,          LINGYAN QUAN, PRO SE
Debtor's Principal:

TELEPHONIC APPEARANCES:

For Charles M. Forman,     Forman Holt
Trustee:                   By:  MICHAEL HOLT, ESQ.
                           365 W. Passaic Street, Suite 400
                           Rochelle Park, NJ 07662

For the U.S. Trustee:      U.S. Department of Justice
                           Office of the U.S. Trustee
                           By:  MICHAEL A. ARTIS, ESQ.
                           One Newark Center, Ste 2100
                           Newark, NJ 07102

For Armando & Melinda      Zavodnick, Perlmutter & Boccia, LLC
Flores:                    By:  MITCHELL PERLMUTTER, ESQ.
                           26 Journal Square, Suite 1102
                           Jersey City, NJ 07306

Audio Operator:            Ntorian Pappas

Proceedings recorded by electronic sound recording, transcript
             produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:   jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

1           AUDIO OPERATOR:  All rise.  Now presiding, the

2   Honorable Stacey L. Meisel.

3           THE COURT:  Thank you.  Please be seated.

4           MR. PERLMUTTER:  Hello.

5           THE COURT:  Hello.

6           COURTROOM DEPUTY:  Yes, hi.  You're conferenced in,

7   so if everyone could just mute their lines.  The Judge will be

8   in in a few seconds.  She's actually signing up now.

9           THE COURT:  Actually I'm here.  Back on Number 1 on

10  the ten o'clock calendar.  I apologize for the delay to the

11  people in the courtroom, but let me call -- yes, let me call

12  you back up, Ms. Quan, to the podium, please, and if you'd give

13  your name again, please.

14          MS. QUAN:  Lingyan Quan.

15          THE COURT:  Thank you.  On the CourtSolutions for the

16  trustee, please.

17          MR. HOLT:  Michael Holt from Forman Holt on behalf of

18  the trustee.

19          THE COURT:  Thank you.  And for the --

20          MR. ARTIS:  Good morning, Your Honor.  Mike Artis is

21  here on behalf of the U.S. Trustee.

22          THE COURT:  Thank you.  And do I have anyone on

23  behalf of the Flores creditors?

24          MR. PERLMUTTER:  Yes, Your Honor.  Mitchell

25  Perlmutter.

1            THE COURT:  Okay.  So, Mr. Perlmutter, I'm not sure

2  what happened, but I took the break in order to allow you to

3  appear considering that you had filed pleadings and have been

4  involved in the case from inception, but you almost --

5            MR. PERLMUTTER:  Yeah, it's my --

6            THE COURT:  -- lost the opportunity because it was

7  taking a little too long.

8            MR. PERLMUTTER:  I apologize for that.

9            THE COURT:  So, in front of the Court -- so, Ms.

10 Quan, you can sit until I -- until you get ready to speak, and

11 if you want to, you can also speak from the microphone at the

12 table.  It's up to you.  You could stay there or --

13           MS. QUAN:  Stay here.

14           THE COURT:  Okay.  You'll stay at the podium.  That's

15 fine.

16           MS. QUAN:  Thank you.

17           THE COURT:  So, this is the trustee's motion -- I'm

18 sorry, this is Ms. Quan's motion to vacate the order approving

19 settlement dated 9/25/2018.  It's Number 193 on the calendar.

20 There was opposition filed on behalf of the Armando and Melinda

21 Flores at ECF 200, and there was also opposition filed by the

22 trustee at ECF 205.

23           This is Ms. Quan's motion, and, Ms. Quan, I reviewed

24 the pleadings, and it appears that you are filing a motion to

25 vacate a settlement that this Court entered in 2018, and you've

4

1 based your motion on what you refer to as a fraud on the court,

2 correct?

3          MS. QUAN:  Yes.

4          THE COURT:  Okay.  So, why don't you tell me a little

5 bit about your motion.  Based on what I read, that was all you

6 said.

7          MS. QUAN:  Okay.  I just have two points.

8          THE COURT:  Okay.  I'm going to ask you to speak a

9 little bit louder --

10          MS. QUAN:  Oh, okay.

11          THE COURT:  -- so I can hear you.  Into the -- you

12 know what, push the microphone down a little bit down.

13          MS. QUAN:  Okay.  So, this one may be too much --

14          THE COURT:  Yes.

15          MS. QUAN:  Yeah, okay.

16          THE COURT:  Thank you.

17          MS. QUAN:  You know, Judge, beginning I don't know,

18 before, I don't know, like a few years ago and I'm still

19 learning, and then as such I realized the court records shop

20 me, and the case disposition default judgment and the case

21 establishes default, and I'm -- I hired a lawyer, you know

22 that.  I hired a lawyer.  The lawyer when we had a trial --

23          THE COURT:  When you say you hired a lawyer, just so

24 the record --

25          MS. QUAN:  Yeah, hired a lawyer.  We had a trial --

1          THE COURT:  Just so the record is clear --

2          MS. QUAN:  Okay.

3          THE COURT:  -- you mean you hired a lawyer on behalf

4   of the company 38-36 Greenville, correct?

5          MS. QUAN:  Yes, yes.

6          THE COURT:  Okay.

7          MS. QUAN:  That's for the trial, yeah, for the trial.

8          THE COURT:  You're the principal of the debtor --

9          MS. QUAN:  Yes, yes.

10          THE COURT:  -- and the debtor had a lawyer in the

11   case.

12          MS. QUAN:  Yes, yes, I have -- and the lawyer, he

13   didn't know, he didn't know we can do this way.  That's after a

14   few years recently we find -- I find we can do this, but it

15   seems though I find the records say the default, that means I

16   could do some, but I didn't do some, that's why they put the

17   case's status as the default, and the case disposition that's

18   default judgment.

19          The reason is I cite in a final judgment because the

20   fraud, the fraud.  And the fraud can be the -- you know,

21   because of fraud on this case.  That's what I feel, and that's

22   a non-final judgment.  And another thing --

23          THE COURT:  One second.

24          MS. QUAN:  Okay.

25          THE COURT:  Go ahead.

6

1           MS. QUAN:  Yeah, and that's my point, two point.  The

2  Holt -- Mr. Holt, he say that during the time when I was in the

3  Chapter 7 and before move to the Chapter 11, before move to the

4  Chapter 7, and the way we want to stay to the appeal because at

5  that time I didn't -- my lawyer still didn't tell me we can do

6  this way, even him, he didn't -- even him, he didn't know we

7  can do -- you know, that's not a final, that's not a final

8  judgment.  And if we knew at that time, if we know at that

9  time, we could do the motion to vacate the judgment, but they a

10 time limit.

11          THE COURT:  So --

12          MS. QUAN:  Yeah.

13          THE COURT:  -- to rephrase what you're saying, as I

14 had said, that you filed the motion alleging that there was a

15 fraud on the court because the state court judgment, as you

16 indicate, you don't believe was a final judgment --

17          MS. QUAN:  Yes.

18          THE COURT:  -- and it was treated as a final

19 judgment, and so you think that there was a fraud on the court

20 --

21          MS. QUAN:  Fraud, yes.

22          THE COURT:  -- because you didn't know back then that

23 you could move to vacate the state court judgment?

24          MS. QUAN:  And that we could do the motion to try it

25 and I think, yeah.  At that time I didn't know, and even now

1  the lawyer, the original lawyer he's getting to know, because

2  some -- everybody understanding different.

3          THE COURT:  But --

4          MS. QUAN:  -- but it is the court.  The case summary

5  show me default judgment and case status just a default.

6          THE COURT:  You said it was a default judgment.

7          MS. QUAN:  Yeah, no, I have a paper I can give you

8  again.

9          THE COURT:  No.

10         MS. QUAN:  Okay.

11         THE COURT:  I'm going to hear from the other parties,

12 but when I look back through the record, at the time that I

13 entered the settlement judgment there was a judgment in state

14 court that had -- was -- had not been appealed, correct?

15         MS. QUAN:  Say again.

16         THE COURT:  The judgment that you're referring to was

17 from December of -- November or December of 2015?

18         MS. QUAN:  December -- November.

19         THE COURT:  November of 2015, and --

20         MS. QUAN:  December I think.

21         THE COURT:  Okay.  Let's just call it 2015.

22         MS. QUAN:  Yeah, 2015, December.

23         THE COURT:  Right.

24         MS. QUAN:  December.

25         THE COURT:  And so the 2015 judgment was entered by

8

1  the state court and had not been overturned, correct?

2          MS. QUAN:  (No audible response).

3          THE COURT:  I don't understand what you mean by fraud

4  because this Court was aware of the judgment that was entered

5  in state court.  So, I don't understand what you mean.

6          MS. QUAN:  I just check the records, the case summary

7  show me default, and the default, the case disposition default

8  judgment --

9          THE COURT:  So there was a default --

10          MS. QUAN:  -- and I said -- yeah, default judgment.

11          THE COURT:  -- default judgment entered.  Okay.

12          MS. QUAN:  I understand default judgment that's not a

13  final judgment because the fraud, the fraud.  You know, you

14  have a judgement of fraud can't be the -- yeah, fraud, there is

15  fraud in the case can't be, the judgment can't be the final

16  judgment.  Defaulted because I should do something, or, for

17  example, I can do the motion and -- but I didn't do some

18  because I'm the lawyer.  I even do -- even though at that time

19  I hired a lawyer, the lawyer he didn't even know that.

20          THE COURT:  But a default --

21          MS. QUAN:  So that when we tried to do that, it was

22  already too late.  The check of the law say only one year you

23  can do after trial, after trial, from the trial date finish --

24  complete the trial date and in one year you can do that.

25  That's recently I find.

1        THE COURT:  This judgment is from 2015 --

2        MS. QUAN:  Yes.

3        THE COURT:  -- and it still exists, correct, it's a

4   final judgment, it hasn't been overturned?

5        MS. QUAN:  Yeah.  But not overturned doesn't mean

6   that it's a final judgment.  It doesn't mean final judgment.

7   That's --

8        THE COURT:  Well, when does a judgment become --

9        MS. QUAN:  The existing judgment is a judgment,

10  that's not a final judgment.

11       THE COURT:  When does a judgment become final in your

12  mind?

13       MS. QUAN:  I think the fraud -- because of the -- the

14  court record show you default judgment.  Can you explain --

15       THE COURT:  A default judgment --

16       MS. QUAN:  Yeah, can you --

17       THE COURT:  -- becomes final --

18       MS. QUAN:  -- explain to me --

19       THE COURT:  When I start talking, then you got to

20  stop --

21       MS. QUAN:  Okay.

22       THE COURT:  -- because our record doesn't get both.

23       MS. QUAN:  Okay.  I'm sorry.  Okay.

24       THE COURT:  But a default judgment is still a

25  judgment, and a judgment is final if it's not overturned on

1  appeal.  It's a final judgment unless something is done, no

2  matter that it's default or not.  I'm probably going to need

3  the same thing on the other issue, too, the other case.

4          So, I -- let me hear from the attorneys that filed

5  opposition for their clients.  I don't understand your argument

6  because you're indicating that a default judgment is not a

7  final judgment.  It's --

8          MS. QUAN:  Yeah, that's it.

9          THE COURT:  -- a judgment, and eventually judgments

10  become final within X number of days of entry unless the Court

11  changes its mind under certain rules, and I'm using layman's

12  terms.  I'm using ordinary terms to explain this to you, but

13  the argument that just because it's a default judgment means

14  it's not a final judgment is incorrect.

15          MS. QUAN:  Yes, yes --

16          THE COURT:  A default judgment becomes a final

17  judgment, just like any other judgment.  Yes, are there ways to

18  change the results, there are, but, as you said, nothing was

19  done.  This is five years -- you're coming to this Court almost

20  five years after the entry of its order, but it's also about,

21  what, that was a 2015 -- that order existed -- 2015, this Court

22  entered an order approving the settlement in 2018.  It's now

23  2023, and you're relying on fraud, but you're indicating

24  there's a fraud because it was a default judgment, but that

25  doesn't explain a fraud to the Court.  That simply says the

1   type of judgment that it was.  Default judgments do become

2   final judgments.

3        MS. QUAN:  You understand default judgment could be

4   final judgment because you -- I understand a default judgment

5   that means -- in short, this judgment I should do something,

6   but I didn't do something.

7        THE COURT:  You didn't do something.  That's right.

8        MS. QUAN:  I didn't do some.  I didn't do some, but

9   doesn't mean that's final judgment.  I understand it like that.

10       THE COURT:  So, I don't know what law you're relying

11  on.  You're telling me what you understand.  You've cited to

12  Civil Procedure Rule 60(d) which allows for a court to change

13  its -- vacate its decision based on fraud, but you have cited

14  to nothing that tells me that a default judgment is not a final

15  judgment once the appropriate time period has passed to allow

16  for a final judgment, and I am telling you that that's the law.

17       So, unless you can show me a case that says

18  otherwise, then I don't understand your argument.  But before

19  you go any further, let me hear from counsel for the trustee

20  first.

21       MR. HOLT:  Thank you, Your Honor.  Your Honor, I

22  don't understand the argument either.  There is a judgment that

23  was entered in the Superior Court of New Jersey.  It was not a

24  default judgment.  It was a judgment that was entered after a

25  jury trial.

1        Although I wasn't present when the debtor filed a

2 Chapter 11 before it was converted to Chapter 7, there were --

3 there was motion practice before Your Honor about the debtor,

4 and Ms. Quan is the sole member of the debtor.  There was

5 motion practice before the case converted to Chapter 7 where

6 the debtor was looking for relief from the automatic stay so

7 that it could appeal that judgment, and the -- again, although

8 I wasn't present, Mr. Perlmutter was, my recollection is that

9 the debtor didn't have the ability to post a bond to get a stay

10 pending appeal, which is what precipitated the Chapter 11

11 filing and ended up in a conversion to Chapter 7.

12        After the trustee was appointed, the trustee looked

13 into whether appealing the entry of that judgment would be in

14 the best interest of the estate, and he determined that it was

15 not for a number of reasons, including that it was a judgment

16 that was entered after a jury trial in the Hudson County

17 Superior Court.  It set a specific dollar amount that was owed

18 by the defendants in that matter which included the debtor and

19 an individual, and there's a judgment that's on the Superior

20 Court Clerk's docket.

21        THE COURT:  So, to be clear, then this was not a

22 default judgment.  I realized, too, as I just pulled up my

23 rules that I think Ms. Quan was referring to Rule 54(b) which

24 talks about a default judgment not disposing of all claims

25 before the parties does not become a final judgment.  However,

13

1 that is not the case, and it's not -- this was not a default

2 because I had forgotten this was a jury trial, which came to a

3 conclusion as to the amount of the damages.

4        So, am I correct, Mr. Holt, that this was not a

5 default judgment, but, in fact, a jury trial that led to the

6 judgment?

7        MR. HOLT:  That is the trustee's understanding.  The

8 trustee did not participate in the trial, Mr. Perlmutter did,

9 but that is -- yes, that is correct.

10        THE COURT:  Yes, I believe -- and I'll let Mr.

11 Perlmutter speak, I'm taxing my brain from back in the

12 beginning of the case, but, Mr. Perlmutter, if you will,

13 please.

14        MR. PERLMUTTER:  Thank you, Your Honor.  This was a

15 full judgment after a full jury trial.  Ms. Quan attended.  Her

16 co-defendant attended.  She had counsel at the jury trial.  She

17 testified at the jury trial.  She presented a defense.  The

18 jury didn't buy it.  The jury entered judgment.

19        I believe before they -- I don't have it in front of

20 me, but I believe before they filed, they filed a motion for a

21 new trial before the Court.  The Court rejected it.  They filed

22 -- instead of filing an appeal in Superior Court to the

23 Appellate Division, they filed with the Bankruptcy Court, and

24 the trustee I believe correctly recited the procedural facts,

25 and the facts on the merits as to what occurred after that.

14

1   So, yeah, there is no --

2          THE COURT:  And that's the part I --

3          MR. PERLMUTTER:  -- default judgment on that.

4          THE COURT:  -- actually recall.  I do remember the

5   case coming before this Court with counsel for the debtor

6   seeking a stay pending appeal, and this Court denied that stay

7   indicating that the bankruptcy would not be utilized without a

8   posting of the bond, as required in state court, and allowed

9   for the parties -- would not allow the bankruptcy to act as a

10  stay to the state court proceeding.  Okay.

11         So, Ms. Quan, this was a jury trial.  I'm not really

12  sure what you're talking about.  You've come to the Court five

13  years after the entry of an order that approved a settlement

14  between the trustee and the Flores creditors.  The Flores

15  creditors were creditors as against the debtor as a result of a

16  judgment that arose from a jury trial for an assault and

17  battery that occurred at the premises resulting in injury, and

18  that amount was fixed.  That amount was settled with the

19  trustee to allow for payment out of this bankruptcy case.

20         Five years later, after the Court has -- almost five

21  years, I think we're a month shy, you've come to the Court

22  asking this Court to vacate that judgment or its order

23  approving the settlement for -- on the basis of fraud --

24         MS. QUAN:  Yes.

25         THE COURT:  -- indicating that that was not a final

15

1   order entered in state court.  I have no idea what you're

2   talking about.  You've provided no legal authority other than

3   Rule 60(d) which allows for a court to change its decision

4   based on fraud.

5          Your recitation today about the default judgment

6   versus a jury trial don't match up, and when I entered that

7   settlement agreement, you had objected, or the debtor objected.

8   There was an objection.  Arguments were made at that hearing,

9   and this Court issued a decision as to why that settlement was

10  in the best interest of the estate and its creditors to allow

11  it to proceed.

12         So, it's not as if it was an uncontested settlement

13  at that time, and now five years later a new argument is being

14  raised, but it's an argument that just simply doesn't make

15  sense to the Court.

16         So, unless you have something further to add, I'm

17  struggling to understand how you think this Court truly could

18  vacate the order it entered regarding the settlement.

19         MS. QUAN:  You mean, I did it too late in the five

20  years, almost five years late?

21         THE COURT:  Well, it's not even a matter of too late.

22         MS. QUAN:  You know, because --

23         THE COURT:  It's authority.  Not only are you five --

24         MS. QUAN:  Also --

25         THE COURT:  Five years is a long time.  So the Court

1 has to determine whether it's reasonable because there is no

2 time limitation set in Rule 60(d). However, you haven't given

3 me a good reason. You haven't shown me any fraud. You haven't

4 even -- what you've indicated is that the judgment from state

5 court in 2015 in your pleading you said it wasn't a final

6 judgment. I don't know what you think it was, but it was a

7 judgment that was entered --

8          MS. QUAN: I think if judgment -- if there's a final

9 judgment, court records should show you the final judgment, but

10 it didn't, just --

11          THE COURT: Even --

12          MS. QUAN: -- a default judgment.

13          THE COURT: Even if you're right, even if you're

14 right, that judgment was sufficient for this Court to fix a

15 settlement and claims because even if you're right and the

16 parties -- and this Court believe the judgment amount to be

17 final, let's say that it was wrong, and it wasn't final, this

18 case has moved so far to distribution that if I examine the

19 same things that I examined for the settlement, I'd come out

20 with the same answer. The judgment amounts allow this Court to

21 fix a claim and allow for a settlement between the parties.

22          Now, what you haven't told me is that --

23          MS. QUAN: That's the fraud.

24          THE COURT: Let me finish. It's not --

25          MS. QUAN: Okay.

1          THE COURT:  -- a fraud.  The Court was well aware of

2    what was going on in state court.  The Court was also well

3    aware that your appearance in this court, I have an opinion

4    there that comments about the fact that you didn't show up to

5    any hearings, you sent an attorney, and you've only shown up

6    many times after the case has basically resolved itself trying

7    to undo the decisions that have been made in the case.

8          However, there was no fraud.  A settlement was

9    reached as to the amount that was owed to these creditors

10   between the trustee and the Flores creditors.  The settlement

11   was based on a judgment that was entered in state court.

12         Even if you were right that that judgment was still

13   open, and it is not, because you don't have an appeal, you

14   don't have a court changing its mind and vacating -- do not

15   talk when I am talking.  I think I said that.  You don't have a

16   court vacating its decision in state court.  You have nothing.

17   In fact, you basically have been unsuccessful, when I say you,

18   either you, the company or the co-defendants, every step of the

19   way in state court.

20         You can't come to this court now throwing something

21   up against the wall and hoping that it sticks to try and get

22   those decisions changed.  It's not going to happen.  Do you

23   have any further arguments on the issue?

24         MS. QUAN:  My point is just this because I just hope

25   you can explain to me the default judgment, but you say the

1  judgment --

2          THE COURT:  You didn't argue --

3          MS. QUAN:  -- default --

4          THE COURT:  I'm sorry for cutting you off because now

5  I've done what I've asked you not to do.

6          MS. QUAN:  No, no, I don't have -- I've just seen the

7  records.

8          THE COURT:  Okay.

9          MS. QUAN:  I've seen the records, the court records,

10 the court summary, case summary.

11         THE COURT:  Thank you.

12         MS. QUAN:  Now, I understand it like that, and I

13 understand if judgment -- it is a final judgment, I think the

14 Court will put a final judgment, but they put (indiscernible)

15 different because of what, because of fraud there.

16         THE COURT:  Mr. Perlmutter, do you want to speak --

17         MS. QUAN:  Yeah, you stated, no fraud.  I don't know

18 how because they say that two different court, two different

19 things --

20         THE COURT:  Mr. --

21         MS. QUAN:  -- that's a fraud.

22         THE COURT:  Okay.

23         MS. QUAN:  Yeah.

24         THE COURT:  Mr. Perlmutter, do you want to speak to

25 the default judgment issue?

19

1          MR. PERLMUTTER:  I don't exactly know what she's

2   talking about in terms of a default judgment.  I know that they

3   -- at least her co-defendant has gone to file for like a new

4   trial years and years after the judgment was entered in state

5   court alleging some sort of defect, and those motions were

6   rejected as well.  And the judgment was not set aside, and they

7   never appealed those orders.

8          So, it's almost like, you know, they -- the final

9   judgment is the final judgment, and I don't know what really

10  she's talking about exactly.  There's no not -- there's no

11  default.  They've contested everything, and they -- frankly,

12  they keep filing frivolous motions, but that's basically all

13  there is.  You know, the final judgment of the court of the

14  trial before a jury has never been set aside.

15          THE COURT:  Okay.  Thank you.  Does anybody have

16  anything else that they wish to add?

17                  (No audible response)

18          THE COURT:  No?

19          MR. BROWNING:  I'd like to say something.

20          THE COURT:  I'm sorry?

21          MR. BROWNING:  I'd like to say something.

22          THE COURT:  No, thank you.  You're not a party in my

23  case.

24          MR. BROWNING:  You mentioned some paper.

25          THE COURT:  I'm sorry.  There's -- I believe it's Mr.

20

1  Browning from the pews in the courtroom speaking.  The Court is

2  not going to recognize Mr. Browning in this case.  He is not a

3  party in this particular case.  He had his own bankruptcy case

4  pending, and I think concluded before Judge Sherwood.  He has

5  shown up and instructed counsel in this case before, which I

6  have noted on my records at that time.  However --

7           MR. BROWNING:  The State ought to retain

8  jurisdiction.  You didn't have jurisdiction to sell the house.

9           THE COURT:  Excuse me, sir.

10          MR. BROWNING:  All right.

11          THE COURT:  If you speak again I will have you

12  removed from my courtroom.  Thank you.

13          As I've indicated, so Mr. Browning is in the pews,

14  and the Court has instructed him not to speak or participate in

15  this particular case as he is neither a party to this case or

16  the principal of the debtor, simply a co-defendant in the state

17  court action.

18          So, I'm about to issue my decision.  So, Ms. Quan, if

19  you have nothing further, then I'll ask that you also sit at

20  the table, please.  Do you have anything further?

21          MS. QUAN:  Okay.

22          THE COURT:  Okay.  Thank you.

23          MS. QUAN:  Because I just --

24          THE COURT:  And anything further from any of the

25  parties on the line?

1            MR. HOLT:  No, Your Honor.

2            MR. PERLMUTTER:  No, Your Honor.

3            THE COURT:  Thank you.  This Court has jurisdiction

4    over this -- oh, you can stay at the table if you prefer.

5            Okay.  This Court has jurisdiction over this matter

6    pursuant to 28 U.S.C. Sections 1334(a) and 157(b) and the

7    standing order of reference from the United States District

8    Court for the District of New Jersey dated July 23rd, 1984 and

9    amended September 18th, 2012.

10           This matter constitutes a core proceeding pursuant to

11   28 U.S.C. Section 157(b)(2)(A) regarding matters concerning the

12   administration of the estate.  The venue is proper under 28

13   U.S.C. Section 1408.

14           This requires in order to give the decision the Court

15   to present a little bit of history, both procedural and factual

16   about this case and how we've come to this point today.  The

17   Court has issued opinions in this case and makes reference for

18   them -- to them for more robust history and background and will

19   limit discussion to matters that are more on point as far as

20   today's issue is concerned.

21           On November 16th, 2015, Judge Jeffrey Jablonski of

22   the New Jersey State Court entered a judgment against Robert

23   Browning resulting from a jury trial finding Browning guilty of

24   assault and battery against Armando Flores that occurred on the

25   38-36 Greenville Avenue property, which can be found at ECF

1  Number 200-1 at 5, and I'll refer to the judgment as the 2015

2  assault judgment.

3       Browning at the time of the assault was a "principal,

4  officer, employee or agent of co-defendant 38-36 Greenville

5  Avenue LLC," ECF Number 200-1 at 5.  And I'll refer to 38-36

6  Greenville Avenue LLC as the debtor if I don't use the full

7  name.

8       The state court found the debtor jointly and

9  severally liable for the judgment because the jury found that

10  the debtor "did negligently hire, supervise or retain co-

11  defendant Robert Browning," ECF Number 200-1 at 5.

12       The state court entered judgment in favor of Armando

13  Flores and his wife Melinda Flores for an amount -- total

14  amount of $1,265,893.18, ECF 200-1 at 5 and 6.  No one appealed

15  the 2015 assault judgment.

16       On March 24th, 2016, the debtor filed for relief

17  under Chapter 11 of Title 11 of the United States Code, which

18  I'll refer to as the Bankruptcy Code.  That's ECF Number 1.

19       On May 20th, 2016, Armando Flores filed Proof of

20  Claim Number 2 in the amount of $1,849,137.62 stemming from his

21  judgment against Browning and the debtor.

22       On July 6th, 2017, Armando Flores filed Proof of

23  Claim Number 3 in the identical amount as Claim Number 2.

24       On May 17th, 2017, the Court issued an order

25  converting case -- Chapter 11 case to Chapter 7, ECF Number 66.

1           On May 16, 2018, the Chapter 7 trustee, Charles

2   Forman, who I'll refer to as the trustee, filed a motion to

3   approve settlement, ECF Number 110.  The purpose of the

4   settlement was to disallow Claim Number 2 as duplicative and to

5   allow the full amount of Claim Number 3 as a general unsecured

6   claim, ECF Number 110-1 at 2.

7           On June 11th, 2018, Lingyan Quan, who is the movant

8   today, who I'll refer to as Ms. Quan or debtor's principal,

9   filed objection to proposed compromise or settlement of

10  controversy, ECF Number 113.

11          On September 11th, 2018, five years ago, this Court

12  held a hearing regarding the proposed settlement, ECF Number

13  193 at 6.

14          Overruling the objection and issuing an oral

15  decision, the Court entered an order approving settlement on

16  September 25th, 2018, ECF Number 122.

17          On September 2nd, 2021, Judge Marybeth Rogers of --

18  from the New Jersey State Court denied Browning's motion

19  seeking to vacate the 2015 assault judgment against him, ECF

20  Number 200-1 at 3.

21          On August 14th, 2023, Ms. Quan brought the present

22  motion -- filed the present motion, which is a motion to vacate

23  order approving settlement dated 9/25/2018, ECF Number 193.

24          In Ms. Quan's certification she indicates that the

25  factual basis for supporting her request is "a non-final

24

judgment was entered in the matter of Flores versus Browning,

et al., HUD-L-3486-13 by the Superior Court of New Jersey."

But that at the settlement hearing on September 11th, 2018 the

trustee's attorney and Judge Stacey Meisel, and I speak in the

third party as I'm referring to her pleading, referred to the

Superior Court judgment as a final judgment, ECF Number 193 at

5 and 6.

Ms. Quan asserts that her legal basis supporting the

motion is found with federal -- in Federal Rule of Civil

Procedure 60(d)(3), ECF Number 193 at 6.  At that time Quan

failed to explain how the facts that she asserted combined with

Rule 60(d)(3) would lead to any relief.  Ms. Quan failed to

file a brief or any legal authority in support of her motion,

see ECF 193.

On August 25th, 2023, counsel to Armando and Melinda

Flores filed a letter brief in opposition to motion to vacate,

ECF Number 200.  The Floreses assert that Ms. Quan's intent is

to "show that there was no final judgment as of the date of the

oral argument of the motion to approve the settlement," ECF

Number 200.  They also indicate that it was difficult to

discern Ms. Quan's legal argument because she had not filed a

brief, ECF Number 200.

The Flores also note that the certification was

unsigned and, therefore, the motion should not be considered

because it violates Federal Rule of Bankruptcy Procedure 8013,

which requires an affidavit in -- for correction, that's ECF

Number 200.  I believe counsel cited to the Rule 8013(c), and

it may actually be 8013(a)(2)(C)(i).

On September 5th, 2023, counsel for the trustee filed

trustee's opposition to motion to vacate order approving

settlement, ECF Number 205.  The trustee indicates the

difficulties in responding to Ms. Quan's assertions because at

that time she had not explained why she believed the judgment

was not final, ECF Number 205 at 2.

The trustee cites to Black's Law dictionary to define

final judgment as "Court's last action that settles the rights

of the parties and disposes of all issues in controversy,

except for the award of costs," ECF Number 205 at 2.  Based on

the definition, Forman, the trustee asserts that the 2015

assault judgment was final because as Judge Rogers' orders

show, no one appealed the 2015 assault judgment, see ECF Number

205 at 2.

The Court notes that in argument today Ms. Quan

extrapolated on her argument to indicate that the alleged fraud

upon the court was because the 2015 assault judgment was, in

fact, a default judgment and not a final judgment.

The Court in taking a liberal read of Ms. Quan's

arguments assumes that Ms. Quan is referring to Federal Rule of

Civil Procedure 54 indicating that default judgments may not be

final if they don't dispose of all issues before the Court.

However, the Court in engaging in a discussion with the parties was told by Ms. Quan that the 2015 assault judgment was a default judgment, but Mr. Perlmutter on behalf of the Flores and Mr. Holt for the trustee reminded the Court that the judgment that was reached was as a result of a full jury trial finding the debtor to be jointly and severally liable, and an order issued from there.

Also in discussion this Court indicated that at the time of the decision that the Court believed the judgment to be final, but indeed would not have changed the outcome of a settlement between the trustee and the Flores creditors at that time based on the fixing and establishing of a claim.

The Court also notes, as I did in the discussions, that there was a full hearing on the settlement. Ms. Quan at that time objected to the settlement. At that time Ms. Quan failed to raise the issue of fraud on the basis of a default judgment.

She indicated in argument today that she didn't know, that she had an hired an attorney, apparently the attorney didn't know, and so on, and so that is why she is here today and that the issue had not been raised at an earlier time.

Rule 60 of the Federal Rules of Civil Procedure is made applicable to cases under the Bankruptcy Code by Rule 9024. Ms. Quan based her motion today on Rule 60(d)(3) which states that, "This rule does not limit a court's power to and,

27

1 Number 3, set aside a judgment for fraud on the court."  That's

2 Federal Rule of Civil Procedure 60(d)(3).

3          The Third Circuit states that, "Fraud on the court

4 'must involve an unconscionable plan or scheme which is

5 designed to improperly influence the Court in its decision,'"

6 Hatchigian v. International Board of Electric Workers Local 98

7 Health and Welfare Fund, 610 F. App'x 142 at 143 (Third Circuit

8 2015) quoting Pizzuto v. Ramirez, 783 F.3d 1171 at 1180 (Ninth

9 Circuit 2015).

10          Furthermore, fraud on the Court must be shown by

11 "clear and convincing evidence," Hatchigian, 610 F. App'x 142

12 at 143, further citations omitted.

13          So, this Court is bound by the Third Circuit and

14 needs to find that by clear and convincing evidence Ms. Quan

15 demonstrated that there was an unconscionable plan or scheme

16 designed to improperly influence this Court in making its

17 decision back in 2018 when it entered the order approving the

18 settlement.

19          Ms. Quan came to court today.  She has some

20 documents, which the Court did not accept, indicating that the

21 judgment that established the claim for the amounts due to the

22 Flores creditors was a default judgment and not a final

23 judgment, and she indicates that she has a state court reading

24 of the various judgments and the like entered it the state

25 court.

28

1          However, the amounts due to the Flores creditors was

2   an amount that was reached after a full jury trial.  This Court

3   had been made aware of that both by the debtor and by the

4   Flores creditors at the inception of this case when it was

5   filed as there were many disputes between the parties hinging

6   on the Flores' claim against the debtor based on its joint and

7   several liability.

8          And to the extent -- and the Court was advised that

9   during the state court trial, and this came on the record today

10  and I cannot recall whether it had been part of the record

11  earlier, that everybody testified at that time, and that Ms.

12  Quan defended and was represented by counsel at that time.

13         But taking a liberal read because those are facts

14  that were presented to the Court or I should say that was

15  information presented to the Court, some of it today, that even

16  taking a liberal read and finding that the debtor did not

17  participate in the state court trial, a judgment was certainly

18  reached as a result of a jury trial, and that jury trial found

19  the debtor to be jointly and severally liable for the assault

20  and battery that occurred against Mr. Flores, which resulted in

21  the 2015 assault judgment.

22         As I indicated and recalled, when this case was

23  filed, this Court was advised that -- by debtor's counsel, and

24  I'll paraphrase how it was put forth, but the facts nonetheless

25  remain the same, that this case was filed as a means of

1  obtaining a stay in order to file an appeal.  This Court did

2  not allow that to happen, and whether it was through motion for

3  stay relief or in some other format of which I'm -- don't

4  readily recall, the Court made it very clear on the record that

5  the bankruptcy would not be used to stay the appeal, and that

6  if, in fact, the debtor wished to proceed with an appeal, the

7  debtor would have to follow the procedures set forth in the

8  state court, which would include the posting of a bond.

9       No one filed an appeal of the 2015 assault judgment.

10  Ultimately, this case later converted from a Chapter 11 to a

11  Chapter 7.  At the time of the 2015 settlement hearing the

12  trustee advised the Court that the trustee was not pursuing an

13  appeal of the assault, 2015 assault judgment.  That's ECF

14  Number 193 at 18.  None of the other parties had pursued an

15  appeal as well.  As such, the Court treated and articulated

16  that the 2015 assault judgment was a final judgment, ECF Number

17  193 at 18.

18       And the Court based its decision on it being a final

19  judgment.  And before I go through a decision that treats it as

20  a final judgment, let me be clear, that if for some reason

21  there is the word default on the state court run of these

22  various orders or the debtor perhaps defaulted in this

23  proceeding back in 2015, it does not change -- it would not

24  have changed the Court's decision in 2018, and it does not

25  change the Court's decision today.  And the reason for that is

30

1   that even without a final judgment, a trustee has an obligation

2   to administer the assets of an estate in as expeditiously -- as

3   expeditiously as possible, and to resolve claims that are filed

4   under -- against the estate.

5           The trustee's duties are set forth in 11 U.S.C.

6   Section 704, and a trustee can settle a claim regardless of its

7   finality or whether it's still in interim -- at an interim

8   process.

9           The Court relied on that the judgment was fixed, but

10  nonetheless the parties had to satisfy the means of before

11  approving the settlement, and the Court went through the

12  standards set forth by the Third Circuit for the substance

13  behind the settlement, as well as relying on the order, and

14  that opinion was an oral decision that was given by the Court

15  where the Court weighed out the factors as to whether the

16  trustee acted reasonably in reaching a settlement, and the

17  Court entered the settlement order.  That order that the Court

18  entered approving the settlement was never appealed either and

19  has become final.

20          When the Court approved the settlement however, the

21  Court noted the possibility that there might be a chance that

22  the debtor -- that the judgment against the debtor would

23  disappear if an appeal was filed and subsequent litigation on

24  behalf of debtor's co-defendant Browning proved successful.  So

25  the Court was aware that steps could potentially be taken that

31

1  might change the amount or the finality of the judgment before

2  it.  That's ECF Number 193 at 38-9.

3          So, the Court was aware of the distinction or the

4  possibilities, and at that time they were remote possibilities

5  that someone would change the outcome of the jury's decision

6  and be successful either on an appeal or some other state court

7  motion changing the amounts that were due to the Flores

8  creditors.  And even knowing that that remote possibility

9  existed, the Court nonetheless approved the settlement between

10 the trustee and Browning, see the discussion at ECF Number 193

11 at 38 and 9.

12         Debtor's counsel at the time, Mr. Tung, who was

13 present and heard at the settlement hearing on the objection of

14 the debtor, argued that the judgment against the debtor may

15 turn out to be null and void should the various state court

16 appeals succeed, and I reiterate this because the argument was

17 made that something else could happen, something could change,

18 that maybe this judgment wasn't quite as final as the Court saw

19 it, but I will note that Mr. Tung never argued that the order

20 wasn't final.  He just simply argued that it could be

21 overturned perhaps on appeal or by subsequent motion.

22         So, there was never any confusion at the time of the

23 2015 -- at the time of the 2018 settlement hearing that the

24 Court was misled, was operating under facts that didn't exist

25 because even if the order wasn't final, the Court knew that

1 there was a remote possibility that things could change, that

2 the amounts could change, that somehow, somewhere, sometime the

3 defendants could prove successful, and nonetheless the Court

4 approved the 2018 settlement order.

5       While the pleadings filed by Ms. Quan offered no

6 evidence as to -- to support the allegations regarding the

7 finality of the judgment, as I indicated, the 2015 assault

8 judgment, as I indicated, Ms. Quan came to court today with

9 some paperwork which the Court didn't review this -- that would

10 potentially show some demarcation of the jury trial 2015

11 assault judgment being a default, it has no bearing on the 2018

12 decision.

13       Perhaps that is an issue that debtor's -- that on

14 behalf of the debtor she should have discussed with debtor's

15 counsel back in 2018 or maybe today, but the law doesn't sit

16 and wait for numerous late motions to get filed, for new ideas

17 to pop up after cases have been decided, or simply because

18 someone operates under the idea that if I keep throwing enough

19 against the wall something may eventually stick.

20       Even if everything worked our perfectly, the Court

21 has to also examine the amount of time that has passed between

22 each action that has taken place in this case.  When I mention

23 the 2015 assault judgment, which stands today the same way that

24 it did back in 2015, it has not overturned.  It has not been

25 vacated.  It has not been changed.

1        I then go to 2018 which is one of many orders that

2   this Court entered in this very long case that has some history

3   attached to it, and that order was not overturned, was not

4   vacated, was not requested to redo under alter or amend

5   judgment as provided under the Rules of Civil Procedure 9023

6   and Rule 59.

7        Further, I move to where we are today, which is five

8   years, five years after the fact, and I remind, Number 1, that

9   there had to be clear and convincing evidence, there was none.

10  There had to be such a showing that this -- that intentional

11  actions were taken against the Court, there was none.

12       But then I move to the issue of even if correct,

13  reasonableness, laches, waiver and the like, and I can't

14  countenance five years later looking back because things --

15  because motions simply aren't working out in favor of the

16  debtor, the debtor's principal, and anyone else that is

17  controlling the nature of this case.

18       I remind that there was a fraud in this case at one

19  point, but that was a fraud that was perpetrated by debtor's

20  counsel and the debtor as it was the party in the case, and I

21  make reference to this Court's decision In re 38-36 Greenville

22  Avenue LLC, 2020 Westlaw 1680724, affirmed sub nom. 38-36

23  Greenville LLC v. Forman, 21 Westlaw 8087151 (District of New

24  Jersey June 9th, 2021), affirmed sub nom. In re 38-36

25  Greenville Avenue LLC, Number 21-2164, 2022 Westlaw 1153123

34

1  (Third Circuit April 19th, 2022).  Those cases set forth the

2  misstatements that were presented to this Court throughout the

3  bankruptcy case and the various findings that this Court made,

4  all of which were affirmed on appeal to the District Court, who

5  was ultimately affirmed by the Third Circuit.

6          The Court finds that there was no fraud that took

7  place during the 2018 settlement conference, that it was a well

8  thought out motion brought in good faith, and the Court

9  reviewed the actions, laid out the various factors and found

10 that the settlement was in the best interest and entered an

11 order.

12         The Court notes that the debtor and Ms. Quan have

13 taken to filing pleadings lacking in substance and sometimes

14 may even start to border on what may be viewed as frivolous.

15         This Court believes that this motion wasted both the

16 Court's time and resources as well as the parties that are

17 involved as it was not based on a meritorious claim.  It's

18 simply one more attempt to attack the state court order that

19 was entered back in 2015.

20         The Court does give warning that there are various

21 means available to the Court in its discretion should further

22 filings without a meritorious basis be filed in this case.  The

23 Court will review them and may act accordingly in exercising

24 its powers.

25         Additionally, so that there is no mistake, no doubt

35

1  or the like, the 2015 assault judgment stands.  This Court is

2  bound to that judgment under both Rooker-Feldman, which has an

3  exception for fraud, but this Court has found that none exist.

4  That's the Rooker-Feldman doctrine, res judicata, collateral

5  estoppel, and the other doctrines that bar actions that have

6  already been decided by one court.

7         Yes, this motion was a motion to vacate a settlement,

8  but it was really a roundabout way of trying to pick at a

9  judgment, the 2015 assault judgment.  It was just one more way

10 of trying to undo what had been done or I should say what had

11 been fixed in that 2015 assault judgment.  So that's why the

12 Court raises those issues and likewise the entire controversy

13 doctrine.  At some point there has to be an end to the

14 proceedings of trying to undo the 2015 assault judgment.  It is

15 what it is.  It's been decided.  This Court recognizes it and

16 will abide by it as well as the orders that this Court has

17 entered into the case.

18        Based on this Court's decision, Ms. Quan's motion is

19 denied with prejudice.  Thank you.  The Court will enter an

20 order of the denial.  Thank you.

21        MR. HOLT:  Thank you.

22        MR. PERLMUTTER:  Thank you, Your Honor.

23                      * * * * *

24

25

36

## **C E R T I F I C A T I O N**

I, COLETTE MEHESKI, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Colette Meheski

COLETTE MEHESKI

J&J COURT TRANSCRIBERS, INC.    DATE:  November 3, 2023